JANE & DENNIS SHARP, Petitioners v. TAMULA-JEAN SHARP, Respondent. In Re: Samantha E. Ferrell and Amanda Lynn Sharp

COA95-1388

(Filed 5 November 1996)

**Divorce and Separation § 357 (NCI4th)— grandparents' right to bring initial custody action—allegation of unfit parent required**

The Supreme Court's decision of *McIntyre v. McIntyre*, 341 N.C. 629, prohibits grandparents from initiating suits for visitation when no custody proceeding is ongoing and the minor child's family is intact, but it does not prohibit grandparents from initiating a custody action pursuant to N.C.G.S. § 50-131.1(a) when no custody proceeding is ongoing; however, the grandparents must still overcome the constitutionally protected paramount right of parents to the custody, care, and control of their children, and in a dispute between a parent and grandparents, there must be allegations that the parent is unfit.

**Am Jur 2d, Divorce and Separation §§ 980, 1002.**

**Award of custody of child where contest is between child's father and grandparent. 25 ALR3d 7.**

**Award of custody of child where contest is between child's mother and grandparent. 29 ALR3d 366.**

**Award of custody of child where contest is between child's parents and grandparent. 31 ALR3d 1187.**

Appeal by plaintiffs from order entered 19 October 1995 by Judge William Y. Manson in Durham County District Court. Heard in the Court of Appeals 18 September 1996.

Plaintiffs are the maternal grandparents of defendant's two minor children. On 31 July 1995 plaintiffs filed a Complaint and Motion for Temporary Custody in Durham County District Court seeking custody of the minor children. At the time of the complaint, Samantha E. Ferrell was three years old, and Amanda Lynn Sharp was eighteen months old. The children were born out of wedlock and had different fathers.

In this initial custody action, plaintiffs alleged that defendant had executed a notarized temporary custody authorization to plaintiffs

effective 23 June 1995 until 1 August 1995, pending defendant's finding suitable housing. Plaintiffs alleged further, *inter alia*, that defendant had not yet found suitable housing; that she had not provided a safe or stable home for the children; that she had relationships with several men and had moved around in both North Carolina and Pennsylvania; that since the children resided with plaintiffs, she had not contributed to the support of the children; that "there is a substantial risk of harm to the minor children if in the physical custody of the defendant-mother"; and that she was not emotionally stable enough to care for the children. Plaintiffs asserted that they were fit and proper people to have custody of the minor children, and that it was in the best interest of the minor children to be in their custody.

After an *ex parte* hearing on 1 August 1995, Judge William Y. Manson found that "there is a risk of emotional and/or physical harm to the minor children should they be returned to the physical custody of the defendant-mother," and granted plaintiffs temporary custody pending a hearing in the matter. On 12 October 1995 defendant filed a Motion to Dismiss plaintiffs' complaint, arguing that it failed to state a claim upon which relief may be granted, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (1990).

At a hearing on the motion on 19 October 1995, Judge Manson dismissed the complaint for lack of subject matter jurisdiction, based upon the court's reading of *McIntyre v. McIntyre*, 341 N.C. 629, 461 S.E.2d 745 (1995). In *McIntyre*, the Supreme Court held that under N.C. Gen. Stat. § 50-13.1(a) (1995), grandparents may not initiate a visitation action when no custody proceeding is ongoing, and the children's family is intact. *Id.* at 635, 461 S.E.2d at 750. Judge Manson ordered that the minor children be returned to the custody of defendant mother.

Pursuant to G.S. § 1A-1, Rule 60, plaintiffs filed a Motion for Relief from the court's 19 October 1995 order, based upon an argument that *McIntyre*, a case addressing only visitation, does not apply in the context of this custody action. At a 7 November 1995 hearing, Judge Manson denied plaintiffs' Rule 60 motion, finding that custody and visitation are synonymous; that there was no pending custody action; and that the children's family was intact. Plaintiffs gave notice of appeal to this Court of the 19 October 1995 order.

Subsequently, this Court granted plaintiffs' petition for a temporary stay of the 19 October 1995 order, as well a writ of supersedeas, pending the outcome of this appeal (COAP95-486).

SHARP v. SHARP

[124 N.C. App. 357 (1996)]

*Levine & Stewart, by Michael D. Levine and Elizabeth R. Harrison, for plaintiff appellants.*

*John M. Bourlon, Ann M. Credle, and Frances P. Solari for defendant appellee.*

ARNOLD, Chief Judge.

This case presents the question of whether the recent Supreme Court's decision in *McIntyre v. McIntyre,* 341 N.C. 629, 461 S.E.2d 745 (1995) prohibits grandparents from initiating a custody action pursuant to N.C. Gen. Stat. § 50-13.1(a) (1995) when no custody proceeding is ongoing.

G.S. § 50-13.1(a) provides:

Any parent, relative, or other person, agency, organization or institution claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child, as hereinafter provided. Unless a contrary intent is clear, the word "custody" shall be deemed to include custody or visitation or both.

In *McIntyre,* the Supreme Court held that G.S. § 50-13.1(a) does not give grandparents "the right to sue for visitation when no custody proceeding is ongoing and the minor children's family is intact." 341 N.C. at 635, 461 S.E. 2d at 750. The *McIntyre* Court reviewed several subsections of Chapter 50 that more specifically addressed visitation rights of grandparents and determined that they "control our interpretation of N.C.G.S. § 50-13.1(a)." 341 N.C. at 634, 461 S.E.2d at 749. The Court found that G.S. § 50-13.2(b1) allows a trial court to grant visitation rights to grandparents in a custody order; G.S. § 50-13.5(j) allows grandparents to make a motion in the cause for visitation after the custody of a minor child has been determined; and G.S. § 50-13.2A allows grandparents of a minor child who has been adopted by a stepparent or a relative of the child to institute an action for visitation. *McIntyre,* 341 N.C. at 632-34, 461 S.E.2d at 748-49.

The *McIntyre* Court concluded that "it appears that the legislature intended to grant grandparents a right to visitation only in those situations specified in these three statutes." *Id.* at 634, 461 S.E.2d at 749. Under these "more minute and definite" statutes, the Court held, "a grandparent's right to visitation arises either in the context of an ongoing custody proceeding or where the minor child is in the custody of a stepparent or a relative." *Id.*

Defendant argues that *McIntyre* applies equally to custody cases initiated by grandparents and requires that such suits be dismissed for lack of subject matter jurisdiction. We disagree.

The *McIntyre* holding was narrowly limited to suits initiated by grandparents for *visitation* and does not apply to suits for *custody*. The *McIntyre* Court specifically addressed the language of the 1989 amendment to G.S. § 50-13.1(a) providing that "[u]nless a contrary intent is clear, the word 'custody' shall be deemed to include custody or visitation or both." The *McIntyre* Court interpreted the legislature's intent in amending the statute as follows:

> The amendment probably was added to provide that in certain contexts "custody" and "visitation" are synonymous; however, here it is clear that in the context of grandparents' rights to visitation, the two words do not mean the same thing. . . . [T]he legislature did not intend "custody" and "visitation" to be interpreted as synonymous in the context of grandparent's rights.

*McIntyre*, 341 N.C. at 634-35, 461 S.E.2d at 749.

We do not believe, therefore, that the Supreme Court intended its narrow holding regarding grandparent's visitation suits to apply broadly to situations where grandparents bring initial suits for custody where there are allegations that the parents are unfit, or have abandoned or neglected their children.

"So long as parents retain lawful custody of their minor children, they retain the prerogative to determine with whom their children shall associate." *Petersen v. Rogers*, 337 N.C. 397, 403, 445 S.E.2d 901, 905 (1994) (quoting *Acker v. Barnes*, 33 N.C. App. 750, 752, 236 S.E.2d 715, 716, *disc. review denied*, 293 N.C. 360, 238 S.E.2d 149 (1977)). But, this paramount right of parents to custody must yield where there is a finding of unfitness. *Id.* at 403, 445 S.E.2d at 904. The law presumes that parents "will perform their obligations to their children" and therefore presumes their right to custody. *Id.* at 403, 445 S.E.2d at 904 (quoting *In re Hughes*, 254 N.C. 434, 436-37, 119 S.E.2d 189, 191 (1961)). A parent's right to custody, however, is not an absolute right. *Id.* "*When a parent neglects the welfare and interest of his child, he waives his usual right to custody.*" *Id.* at 403, 445 S.E.2d at 904 (emphasis in original) (quoting *In re Hughes*, 254 N.C. 434, 436-37, 119 S.E.2d 189, 191).

In this case, the grandparents filed suit for custody pursuant to G.S. 50-13.1, which is usually invoked in the context of divorce and

separation. However, this provision is intended to cover "a myriad of situations in which custody disputes are involved" and its application is not "restricted to custody disputes involved in separation or divorce." *Oxendine v. Dept. of Social Services*, 303 N.C. 699, 706-07, 281 S.E.2d 370, 374-75 (1981).

Although grandparents have the right to bring an initial suit for custody, they must still overcome the "constitutionally-protected paramount right of parents to custody, care, and control of their children." *Petersen*, 337 N.C. at 403-04, 445 S.E.2d at 905. While the best interest of the child standard would apply in custody disputes between two parents, in a dispute between parents and grandparents there must first be a finding that the parent is unfit. *Cf. Petersen*, 337 N.C. at 401-02, 445 S.E.2d at 903-04.

The complaint and motion for temporary custody filed by the grandparents in this case allege that the mother has not provided safe and suitable housing for her children, that she has not contributed to the support of her children, that the children's father has not been involved with the children, and that the children are at substantial risk of harm. Because the district court dismissed the case for lack of subject matter jurisdiction, there was never a hearing to determine whether the allegations were true, or whether the mother was a fit parent.

Defendant argues that her parents should be restricted to making allegations of potential harm to their grandchildren only through the procedures provided by the Juvenile Code of Chapter 7A of the General Statutes. N.C. Gen. Stat. §§ 7A-516 *et. seq.* (1995). Pursuant to these statutes, any individual who suspects child abuse or neglect must report such allegations to the Department of Social Services. G.S. § 7A-543. The Department of Social Services is required to investigate the allegations, and if they are substantiated, file a complaint invoking the jurisdiction of the district court for the protection of the juvenile. G.S. § 7A-544.

Without question, social service workers who investigate allegations of abuse or neglect are concerned, dedicated, hardworking people who care deeply about the safety of children. But these individuals are "strangers" to the family unit under investigation. Moreover, all too often, Social Services lacks adequate resources to protect every child who is at risk of potential harm, and the results are sometimes tragic. Close family members, especially grandparents, are

often in the best position to discover and substantiate abuse or neglect, and immediately intervene to protect the children.

We do not believe the legislature intended to provide access to our courts, where serious allegations exist, only through the protracted process of a social service investigation, while closing the courthouse door to those who may be the most concerned, members of the child's extended family. Where the safety of a child is at issue, the doors of our courts must swing wide open.

The legislature has spoken to the issue of child custody in three separate chapters, Chapter 50 (addressing primarily divorce and separation proceedings), Chapter 7A of the Juvenile Code (focusing on juvenile delinquency, neglect and abuse), and Chapter 50A (the Uniform Child Custody Jurisdiction Act). N.C. Gen. Stat. §§ 50 *et. seq.*; §§ 7A-516 *et. seq.* (1995); §§ 50A *et. seq.* (1995 Supp.). A constant theme sounded throughout each of these chapters is the overriding importance of protecting the welfare of children.

The principle that our courts should be readily accessible to hear custody issues when the welfare of a child is at issue is clearly expressed in the Uniform Child Custody Jurisdiction Act. G.S. § 50A *et. seq.* One of the stated purposes of the Act is to "[d]iscourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child." G.S. § 50A-1(4). Keeping this purpose in mind, the district court is authorized to decide child custody matters and has jurisdiction to make a child custody determination by *initial decree if it is in the best interest of the child* because

(i) the child and the child's parents, or the child and at least one *contestant*, have a significant connection with this State, and (ii) there is available in this State substantial evidence relevant to the child's present or future care, protection, training, and personal relationships; or

The child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent.

N.C. Gen. Stat. § 50A-3(a)(2)(3) (1989) (emphasis added). A *contestant* in a custody dispute is defined as "a person, including a parent,

**SHARP v. SHARP**

[124 N.C. App. 357 (1996)]

who claims a right to custody or visitation rights with respect to a child." N.C. Gen. Stat. § 50A-2(1) (1989).

The grandparents in this case claim they have a right to custody of their grandchildren because they are fit to provide for their care while the children's parents are unable or unwilling to do so. Given the allegations of this case it is clearly in the best interest of the children that the district court assume jurisdiction, hold a hearing, and make findings of fact with regard to the fitness of the parents to retain custody.

The district court is also vested with *exclusive* and original jurisdiction over any case involving a juvenile who is alleged to be abused or neglected. N.C. Gen. Stat. § 7A-523 (1995). Our laws make clear that protecting the welfare of children is of such overriding importance that our courts must be readily accessible when the potential for harm exists. *See Oxendine*, 303 N.C. at 707-08, 281 S.E. 2d. at 375-76 (rejecting the argument that foster parents should be barred from seeking an adoption determination on the theory they lacked standing).

Defendant contends that grandparents may bring a suit for custody only when there is an ongoing custody proceeding as provided by G.S. § 50-13.5(j). This procedural provision simply makes clear that grandparents have the right to file suit for custody or visitation during an ongoing proceeding, but it does not restrict their right to bring an initial custody suit pursuant to G.S. § 50-13.1 when there are allegations that the parent is unfit. In *Kerns v. Southern*, 100 N.C. App. 664, 397 S.E.2d 651 (1990), this Court rejected the argument that grandparents lack standing to sue for custody of their grandchildren pursuant to G.S. § 50-13.1.

We hold accordingly that G.S. § 50-13.1(a) grants grandparents the right to bring an initial suit for custody when there are allegations that the child's parents are unfit. The trial court's order dismissing plaintiffs' complaint for lack of subject matter jurisdiction is

Reversed and remanded.

Judges JOHNSON and GREENE concur.