**WELLONS v. WHITE**

[229 N.C. App. 164 (2013)]

FRANCES LEANNE WELLONS, Plaintiff
v.
WILLIAM ZACHARY WHITE, Defendant
v.
JOHN F. WELLONS, and wife, BOBBIE B. WELLONS, Intervenors

No. COA 12-1205

Filed 20 August 2013

1.  **Child Visitation—standing—grandparents—show cause motion**

    The trial court did not err in a child custody case by declining to dismiss the grandparents' show cause motion for lack of standing. The grandparents had standing to pursue visitation rights because there was an ongoing custody dispute and the trial court had jurisdiction to award them visitation. Thus, the grandparents later had standing to enforce their visitation rights through a show cause motion.

2.  **Jurisdiction—child custody—grandparent visitation—law of the case doctrine—collateral attack**

    Based on the law of the case doctrine and the prohibition against collateral attacks on underlying judgments, the Court of Appeals did not have jurisdiction to review defendant father's argument in a child custody appeal that the trial court erred by granting the grandparents visitation.

3.  **Contempt—civil—purge**

    The trial court erred in a child custody case by finding defendant father in civil contempt of court. The court failed to clearly specify what defendant could and could not do to purge himself of contempt.

Appeal by defendant from order entered 5 July 2012 by Judge Jeffrey Evan Noecker in New Hanover County District Court. Heard in the Court of Appeals 27 February 2013.

*Rice Law, PLLC, by Richard Forest Kern and Mark Spencer Williams, for defendant-appellant.*

*J. Albert Clyburn for intervenors-appellees.*

HUNTER, JR., Robert N., Judge.

William Zachary White ("Mr. White") appeals a trial court order: (i) denying his motion to dismiss; (ii) holding him in civil contempt; (iii) granting grandparent visitation; and (iv) rejecting his constitutional challenge. Upon review, we affirm in part, dismiss in part, and reverse as to contempt.

## I. Facts & Procedural History

On 24 July 2003, Mr. White and Frances Leanne Wellons ("Ms. Wellons") married. Mr. White served as a Marine Corps Lance Corporal. On 4 April 2005, the couple had a son ("the child"). Given Mr. White's active military service, the child lived with Ms. Wellons in Alamance County immediately after his birth. In June 2005, Ms. Wellons and the child moved to New Hanover County to live with Ms. Wellons' parents, John Wellons and Bobbie Wellons (the "Grandparents").[1]

On 13 December 2005, Mr. White and Ms. Wellons divorced. Mr. White's mother acted as his attorney-in-fact for the divorce proceedings because Mr. White was serving in Iraq. After the divorce, the child continued to live with Ms. Wellons at the Grandparents' New Hanover County home.

### A. 4 April 2006 Child Custody Order

On 27 January 2006, Ms. Wellons filed a complaint against Mr. White in New Hanover County District Court seeking sole custody and child support. The complaint noted that Mr. White still served in Iraq. A few weeks after Ms. Wellons filed the complaint, Mr. White returned to the United States and lived at the barracks of Camp Lejeune in Jacksonville.

On 4 April 2006, the district court entered an order granting Ms. Wellons and Mr. White "joint legal custody of the minor child." Since Mr. White still lived in the Marine Corps barracks, the district court determined he had no "suitable residence to have visits with the child overnight."[2] Therefore, the district court gave Ms. Wellons primary custody. Because Mr. White planned to leave the Marine Corps in December 2006, the district court allowed Mr. White to gain increased custody when he "has set up a residence suitable to care for the minor child." The district court also ordered Mr. White to pay $820 per month in child support. Lastly, the district court determined the order resolved all pending

---

1. Although the Grandparents' primary residence is in New Hanover County, they also own a house in Burlington. Nothing in the record indicates whether Ms. Wellons or the child ever lived at the Grandparents' Burlington home.

2. The district court also expressed concern over Mr. White's driving while impaired ("DWI") conviction in Virginia.

issues between the parties. After this order, the child continued to live with Ms. Wellons at the Grandparents' home in New Hanover County.

### B. 30 November 2006 Temporary Child Custody Order

On 3 August 2006, the Grandparents filed a motion to intervene, seeking "temporary custody of the minor child." *See* N.C. Gen. Stat. § 50-13.1(a) (2011) ("Any parent, relative, or other person, agency, organization or institution claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child.").

The Grandparents first argued they already had *de facto* custody of the child because he had resided at their home since June 2005. The Grandparents further contended "neither [Ms. Wellons] nor [Mr. White] are fit and proper persons to have the primary care of the minor child." Specifically, they alleged: (i) Ms. Wellons was currently receiving inpatient treatment for mental illness; (ii) Mr. White "ha[d] not yet exercised visitation alone with the minor child without the aid or assistance of either his mother or girlfriend since the entry of the April 2006 Custody Order;" (iii) Mr. White cannot provide a "stable home environment" for the child; and (iv) Mr. White willfully withheld custody from Ms. Wellons.

On 9 August 2006, Mr. White moved to dismiss the Grandparents' motion because they failed to allege sufficient facts supporting their claim. *See* N.C. R. Civ. P. 12(b)(6). Mr. White also argued he never acted inconsistently with his constitutionally-protected parental status.

Although a hearing was held in August 2006, the district court did not enter a written temporary child custody order until 30 November 2006. The order stated the Grandparents "have been allowed to intervene in this action pursuant to Rule 24 of the North Carolina Rules of Civil Procedure."[3]

The order also granted Mr. White primary custody and suspended his monthly child support payments. Still, it granted Ms. Wellons visitation every other weekend at the Grandparents' New Hanover County home. The order elaborated that if Ms. Wellons did not exercise weekend visitation, the Grandparents could still exercise visitation every other weekend at their home. The order required Mr. White, Ms. Wellons, and the Grandparents to select an exchange "point equidistant between the residences of the parties."

---

3. The district court mistakenly failed to actually enter an order allowing intervention. The district court entered an order correcting this oversight on 25 November 2009, *nunc pro tunc*, 7 August 2006.

After this order, the child first lived with Mr. White and his new girlfriend Christina Ross ("Ms. Ross") in Jacksonville.[4] The record does not indicate whether Mr. White still lived in the Marine Corps barracks at this time. Mr. White left the Marine Corps on 9 December 2006 and moved to Greensboro with Ms. Ross and the child.

### C. 15 December 2006 Consent Custody Order

On 14 December 2006, Ms. Wellons filed a motion for emergency custody because the previous orders did not establish a holiday visitation schedule. Ms. Wellons argued that given her animosity with Mr. White's girlfriend, the parties would not otherwise agree to a holiday schedule.

This hostility arose from an incident on 10 December 2006. Ms. Wellons still lived with her parents and exercised visitation at the Grandparents' home. On 10 December 2006, Mr. White sent Ms. Ross to pick up the child at a scheduled custody exchange. Ms. Wellons arrived late to the exchange because the child had napped longer than expected.[5] When Ms. Wellons got to the exchange place, Ms. Ross yelled at Ms. Wellons for her tardiness. The conflict escalated, and Ms. Wellons asked a gas station attendant to call 911.

On 15 December 2006, the district court granted Ms. Wellons and the Grandparents extended holiday visitation. The district court also required Ms. Ross not to attend any more custody exchanges. Finally, the district court again retained ongoing jurisdiction over the case.

### D. 28 December 2007 Child Custody Order

On 6 March 2007, Mr. White filed a motion in the cause and a showing of changed circumstances seeking sole custody and child support from Ms. Wellons.[6] See N.C. Gen. Stat. § 50-13.7(a) (2011). On 21 May 2007, Ms. Wellons filed a reply asking the court to: (i) dismiss and deny Mr. White's request; (ii) return primary custody to her; (iii) reinstate Mr. White's child support obligations; and (iv) grant her attorneys' fees. The matter came

---

4. Based on the trial court's announcement of its decision at the hearing, the child actually resided with Mr. White and Ms. Ross since August 2006.

5. Ms. Wellons' father drove her to the exchange point.

6. Mr. White labeled his motion as "Answer and Counterclaim." Since the document was filed more than a year after the complaint, the district court appears to have treated it as a motion in the cause and a showing of changed circumstances. See N.C. Gen. Stat. § 50-13.7(a) (2011) ("[A]n order of a court of this State for custody of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested."). Therefore, we treat it as such on appeal.

on for hearing during the 13 September, 14 September, and 2 November 2007 Family Court Sessions of New Hanover County District Court. On 28 December 2007, the district court issued a custody order superseding all previous orders. The order made the following factual findings.

Since the 30 November 2006 order, Ms. Wellons had lived at her parents' home in New Hanover County. She did not pay rent or utilities. For 26 days from 12 July 2006 to 7 August 2006, Ms. Wellons was involuntarily committed by her parents for mental illness at The Oaks at New Hanover Regional Medical Center. After her release, she did not take her medication or comply with recommended follow-up treatment. On 15 August 2006, she also tested positive for marijuana in a drug screen at a follow-up hospital visit.

Ms. Wellons was again involuntarily committed for nine days from 22 August 2006 to 31 August 2006 at Cherry Hospital in Goldsboro. During that time, Dr. Jerry Sloan, a psychologist at Cherry Hospital, diagnosed Ms. Wellons with "Bipolar 1 Disorder, single manic episode, severe, with psychotic features; Mixed Personality Disorder, antisocial and hysterical traits; and possibly a brief psychotic disorder." Dr. Sloan determined "[Ms. Wellons] does not appreciate the full extent of her symptoms that caused her hospitalization."

The district court also examined certain photographs Mr. White offered into evidence. These photographs, posted on various websites, showed Ms. Wellons at bars on dates when she had custody of the child. The record does not indicate whether the Grandparents supervised the child on these dates. Ms. Wellons contended the photographs were part of her job in nightlife marketing; however, the district court determined that "due to the number of pictures, the various activities that were depicted in the pictures, and the pictures being found at websites other than [her company's website]," Ms. Wellons' explanation was not credible.

The district court further noted that Ms. Wellons was convicted of DWI on 27 April 2006. Although the DMV revoked her driver's license after her DWI conviction, she continued to drive with the child as a passenger.

The district court then described how Mr. White lived with his girlfriend in a safe neighborhood where the child had his own bedroom. Mr. White had enrolled in Guilford Technical Community College and lived near his extended family. His family cared for the child while he was at school and work.[7] The district court also mentioned that Ms. Ross had full-time employment.

---

7. Later, in early 2010, Mr. White became a police officer with the Greensboro Police Department.

**WELLONS v. WHITE**

[229 N.C. App. 164 (2013)]

At the 13 September 2007 hearing, the Grandparents dismissed their initial 3 August 2006 request for primary custody. Instead, they told the court they now only sought "grandparent visitation privileges with the minor child." At the hearing, Mr. White, Ms. Wellons, and the Grandparents also stipulated that "a material change in circumstances had occurred as a result of the Plaintiff's involuntary commitments."

Based on its factual findings, the district court determined Mr. White was a "fit and proper person to continue to have the primary custody of the minor child, and it [was] in the best interest of the minor child that . . . permanent primary custody remain with [Mr. White]."

Still, the district court granted Ms. Wellons: (i) weekend visitation privileges every two weeks during the school year; (ii) alternating week-long visitation during the summer months; and (iii) alternating holiday visitation. It also granted the Grandparents visitation concurrent with Ms. Wellons' visitation. The district court stated the Grandparents "may exercise their visitation privileges in the event . . . [Ms. Wellons] is not able to be present" at scheduled visitations. It further elaborated that if Ms. Wellons moved from the Grandparents' home, the Grandparents could "file an appropriate Motion for the Court to establish their specific grandparent visitation privileges with the minor child."

### E. Other Interim Orders and Motions

On 22 December 2008, Ms. Wellons filed a motion to show cause why Mr. White was not in contempt. Ms. Wellons alleged Mr. White violated the 28 December 2007 order by refusing to allow her visitation during school holidays. Although a hearing was scheduled for 16 February 2009, the record does not indicate the outcome of this motion.

On 24 July 2009, Mr. White filed a motion in the cause to modify Ms. Wellons' visitation. In his motion, Mr. White noted Ms. Wellons was now living with a boyfriend in New Hanover County. He argued the child should not visit Ms. Wellons because her smoking exacerbated the child's asthma.

On 3 March 2010 the parties resolved the issue by entering into a memorandum of consent judgment and order. This order modified the 28 December 2007 order to incorporate certain parenting guidelines. Because Ms. Wellons had recently moved to Burlington for work, the order also modified the custody exchange schedule to require Ms. Wellons and Mr. White to deliver the child directly to each other's residence, rather than meeting halfway between the residences.

On 11 May 2010, Ms. Wellons and the Grandparents filed a motion in the cause to change custody plans because Ms. Wellons had moved back to the Grandparents' home. On 27 July 2010, the district court modified the 28 December 2007 order and retained ongoing jurisdiction.

### F.  1 April 2011 *Ex Parte* Order

On 1 April 2011, Mr. White filed: (i) a motion to modify the 28 December 2007 custody order based on a substantial change in circumstances; and (ii) a motion for an emergency *ex parte* child custody order. Mr. White alleged Ms. Wellons and the Grandparents neglected the child by creating "an injurious and dangerous environment for the minor child when he visits with his mother."

On 4 February 2011, Mr. White's wife (Mrs. White, formerly Ms. Ross) noticed a bruise on the child and reported Ms. Wellons to the Guilford County Department of Social Services ("Guilford County Social Services" or "Social Services") for abuse. When Social Services met with Ms. Wellons, she said the child received the bruise while playing with another child. On 6 February 2011, Mr. White's wife reported a new scratch on the child. Ms. Wellons said the child received the scratch while playing with a neighbor's dog. On 8 February 2011, a social worker met with the child and believed Mr. White's wife coached the child on what to say during the interview.

On 20 February 2011, Mr. White's wife reported that the child did not appear to have received a bath while visiting Ms. Wellons and the Grandparents. On 7 March 2011, Mr. White reported to Guilford County Social Services that Ms. Wellons had previously been involuntarily committed for mental illness. On 15 March 2011, Social Services received a report alleging Ms. Wellons socialized with heroin users. Throughout all these events, although Ms. Wellons still lived with her parents, the record does not indicate the Grandparents' supervisory role over the child.

Ultimately, Social Services determined Ms. Wellons neglected, but did not abuse, the child. It later specified that: (i) Ms. Wellons did not cooperate with the Social Services investigation; (ii) Ms. Wellons refused to enact a safety plan or follow through with recommended services; and (iii) the Grandparents refused to enact a safety plan. Resultingly, Social Services recommended the child not have visitation with either Ms. Wellons or the Grandparents. It also recommended Ms. Wellons complete a parenting evaluation and substance abuse assessment.

On 1 April 2011, the district court entered an *ex parte* order granting Mr. White temporary sole custody. Until future hearing, the district

court granted the Grandparents visitation only as permitted by Guilford County Social Services. The district court did not grant Ms. Wellons any temporary visitation privileges. Lastly, the *ex parte* order allowed Mr. White to request "the Sheriff of New Hanover County or any law enforcement officer into whose hands a copy of this Ex Parte Order of Temporary Custody shall come, . . . to take such steps as may be necessary to physically secure the body of the child, and return that child to the actual custody of [Mr. White]."

### G. 15 August 2011 Custody Order

A subsequent hearing occurred during the 15 April 2011 session of New Hanover County District Court. At the end of the hearing, the district court announced it was dissolving the *ex parte* order as to the Grandparents on the condition that they not allow Ms. Wellons to contact the child. The district court also required that the Grandparents' next weekend visit occur in Burlington, but that all other visits occur as outlined in the previous orders.

On 19 April 2011, a Guilford County social worker prepared a safety assessment requiring all the Grandparents' future visits to occur in Burlington to prevent Ms. Wellons from contacting the child. Because the Grandparents believed this assessment contradicted the district court's 15 April 2011 requirements, they refused to execute it.

Over the next several months, the parties disputed how to draft the written order. On 15 August 2011, the trial court resolved the disputes by entering a written order modifying the 1 April 2011 *ex parte* order. The new order: (i) dissolved the 1 April 2011 *ex parte* order as to the Grandparents (allowing them full visitation under the 28 December 2007 order); (ii) instructed the Grandparents not to allow Ms. Wellons to have any contact with the child; and (iii) granted the Guilford and New Hanover County Departments of Social Services exclusive authority to authorize and supervise Ms. Wellons' visitation with the child. The court retained ongoing jurisdiction for future orders.

### H. 5 July 2012 Contempt Order

On 22 September 2011, the Grandparents filed a motion to show cause why Mr. White was not in contempt.

They referenced a particular incident that occurred on 27 June 2011. On that date, Mr. White met with Guilford County Social Services for a Child Family Team Meeting. At the meeting, he told Social Services: (i) the child was exposed to drugs and alcohol when he visited the

Grandparents; (ii) the Grandparents let Ms. Wellons contact the child; (iii) Ms. Wellons had severe mental problems; and (iv) Ms. Wellons was "on a heroin binge." As a result, Guilford County Social Services desired to suspend the Grandparents' visitation.

That day, the child was visiting the Grandparents in Burlington. After the meeting with Social Services, Mr. White used the 1 April 2011 *ex parte* order to have police retrieve the child from the Grandparents' Burlington residence. The Grandparents alleged Mr. White has not let them see the child since this encounter.

On 28 October 2011, Mr. White filed a motion to dismiss the Grandparents' motion. Mr. White did not deny the Grandparents' allegations; instead he argued the Guilford County and New Hanover County Departments of Social Services, as well as the child's therapist, had advised him not to allow the Grandparents to have visitation. Mr. White further contended: (i) the district court never actually granted the Grandparents visitation; (ii) the 28 December 2007 order failed to make specific findings regarding the Grandparents' fitness; (iii) the Grandparents lacked standing; and (iv) Mr. White had a fundamental right to "make decisions concerning the care, custody, and control" of his child.

On 30 March 2012, the district court entered an interim order: (i) denying Mr. White's motion to dismiss; (ii) granting the Grandparents' motion to show cause; and (iii) declaring Mr. White to "be in direct and wilful [sic] civil contempt of the prior Orders of the Court." The court then dissolved the 15 April 2011 order and reinstated the 28 December 2007 order in full. It also allowed the Grandparents to "continue to remain the Interveners [in the case], with all of the rights and privileges of visitation given to them by the prior Order of 28 December 2007, without supervision." Lastly, it permitted Ms. Wellons to have the visitation privileges outlined in the 28 December 2007 order.

The district court allowed Mr. White to "purge his contempt by fully complying with the [30 March 2012] order." Additionally, the district court required Mr. White to "fully comply[] with each subsequent custody order that's entered." The district court threatened imprisonment if Mr. White did not adhere to these terms.

On 5 July 2012, the district court entered a final order containing the same terms as the interim order. On 10 July 2012, Mr. White filed timely notice of appeal from the 5 July 2012 order.

## II.  Jurisdiction & Standard of Review

This Court has jurisdiction to review the trial court's contempt ruling pursuant to N.C. Gen. Stat. § 7A-27(c) (2011).[8]

"When reviewing a trial court's contempt order, the appellate court is limited to determining whether there is competent evidence to support the trial court's findings and whether the findings support the conclusions [of law]." *Shumaker v. Shumaker*, 137 N.C. App. 72, 77, 527 S.E.2d 55, 58 (2000). "The trial court's conclusions of law drawn from the findings of fact [in civil contempt proceedings] are reviewable *de novo*." *See Tucker v. Tucker*, 197 N.C. App. 592, 594, 679 S.E.2d 141, 143 (2009) (quotation marks and citation omitted).

We review questions of standing in child custody actions *de novo*. *See McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) ("Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal."); *Estate of Apple ex rel. Apple v. Commercial Courier Exp., Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005) ("If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim.").

" 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

## III.  Analysis

On appeal, Mr. White makes four arguments. First, he contends the Grandparents lacked standing. Second, he argues the district court erred by granting the Grandparents visitation when: (i) he is a fit parent; (ii) the Grandparents initially intervened seeking custody, not visitation; and (iii) the Grandparents never filed a motion seeking visitation. Alternatively, Mr. White contends N.C. Gen. Stat. §§ 50-13.2(b1) and 50-13.5(j) are unconstitutional. Lastly, Mr. White argues the district court erred by holding him in contempt. Upon review, we affirm in part, dismiss in part, and reverse as to contempt.

---

8. We note that the last sentence of the 5 July 2012 final order states "This Cause is retained for further Final Order of the Court." We believe the district court mistakenly retained this language from the 30 March 2012 interim order. Therefore, we determine this clerical mistake does not divest us of jurisdiction. *See* N.C. R. Civ. P. 60(a).

## A. Grandparent Visitation Statutes[9]

"At common law, grandparents [have] no standing to sue for visitation of their grandchildren." *Montgomery v. Montgomery*, 136 N.C. App. 435, 436, 524 S.E.2d 360, 361 (2000). However, our legislature has enacted four statutes providing grandparents statutory standing to seek custody or visitation. Preliminarily, we discuss those four statutes.

First, N.C. Gen. Stat. § 50-13.1(a) grants grandparents standing to seek custody at any time. *See* N.C. Gen. Stat. § 50-13.1(a) (2011) (providing standing to "any . . . person . . . claiming the right of . . . custody or visitation"). Although this broad statute describes general standing to seek custody or *visitation*, our Supreme Court has applied canons of statutory construction to determine the statute only grants grandparents standing for custody, not visitation. *See McIntyre v. McIntyre*, 341 N.C. 629, 635, 461 S.E.2d 745, 750 (1995);[10] *see also Sharp v. Sharp*, 124 N.C. App. 357, 360, 477 S.E.2d 258, 260 (1996) ("The *McIntyre* holding [that the grandparents did not have standing] was narrowly limited to suits initiated by grandparents for *visitation* and does not apply to suits for *custody*.").

To receive custody under N.C. Gen. Stat. § 50-13.1(a), grandparents must prove parental unfitness. *See Eakett v. Eakett*, 157 N.C. App. 550, 553, 579 S.E.2d 486, 489 (2003) (holding that grandparents must "show that the parent is unfit or has taken action inconsistent with [his or] her parental status in order to gain custody of the child" (citations omitted)). "The requirement to show unfitness if a grandparent initiates a custody dispute is consistent with a parent's constitutionally protected right to the care, custody and control of the child." *Id.* (citing *Troxel v. Granville*, 530 U.S. 57 (2000)). However, under N.C. Gen. Stat. § 50-13.1(a), "grandparents are not required to prove the grandchild is not living in an intact family in order to gain custody." *Id.* (citations omitted).

Second, N.C. Gen. Stat. § 50-13.2(b1) provides grandparents standing to seek visitation during an ongoing parental custody dispute. *See*

---

9. For a more detailed discussion of grandparent visitation statutes, see Cheryl Daniels Howell, *Third Party Custody and Visitation Actions: 2010 Update to the State of the Law in North Carolina*, UNC Sch. of Gov't Family Law Bulletin, Jan. 2011, at 22–29.

10. Specifically, the *McIntyre* court held, "The legislature's creation of special statutes to provide for grandparents' visitation rights suggests that it did not intend N.C. [Gen. Stat.] § 50-13.1(a) as a broad grant to grandparents of the right to visitation." *McIntyre*, 314 N.C. at 634, 461 S.E.2d at 749. Instead, "the legislature intended to grant grandparents a right to visitation only on [the] situations specified in [those] three statutes," not in situations covered by N.C. Gen. Stat. § 50-13.1(a). *Id.*

N.C. Gen. Stat. § 50-13.2(b1) (2011) ("An order for custody of a minor child may provide visitation rights for any grandparent of the child as the court, in its discretion, deems appropriate."); *see also Sharp*, 124 N.C. App. at 363, 477 S.E.2d at 262 ("[N.C. Gen. Stat. § 50-13.2(b1)] simply makes clear that grandparents have the right to file suit for custody or visitation during an ongoing proceeding.").

Third, N.C. Gen. Stat. § 50-13.5(j) provides grandparents standing to seek visitation after a court has entered a final custody order. However, grandparents must meet certain conditions:

> [i]n any action in which the custody of a minor child has been determined, upon a motion in the cause and a showing of changed circumstances pursuant to G.S. 50-13.7, the grandparents of the child are entitled to such custody or visitation rights as the court, in its discretion, deems appropriate.

N.C. Gen. Stat. § 50-13.5(j) (2011). Our courts have added an additional requirement: the "intact family" rule. *Eakett*, 157 N.C. App. at 554, 579 S.E.2d at 489.

Under the "intact family" rule, "[a] grandparent cannot initiate a lawsuit for visitation rights unless the child's family is already undergoing some strain on the family relationship, such as an adoption or an ongoing custody battle." *Id.* The "intact family" rule is intended to protect parents' constitutional right "to determine with whom their child shall associate." *Sharp*, 124 N.C. App. at 360, 477 S.E.2d at 260)(quotation marks and citation omitted); *see also Eakett*, 157 N.C. App. at 554, 579 S.E.2d at 489. In North Carolina, an "intact family" is not limited to situations where "both natural parents [live] together with their children;" instead, it may "include a single parent living with his or her child." *Fisher v. Fisher*, 124 N.C. App. 442, 445, 477 S.E.2d 251, 253 (1996) (quotation marks and citation omitted).

Fourth, N.C. Gen. Stat. § 50-13.2A provides standing for grandparents to seek visitation when a child is adopted by a stepparent or relative. *See* N.C. Gen. Stat. § 50-13.2A (2011) ("A biological grandparent may institute an action or proceeding for visitation rights with a child adopted by a stepparent or a relative of the child where a substantial relationship exists between the grandparent and the child.").

## B. Standing

[1] Mr. White first argues the Grandparents lacked standing to: (i)

pursue visitation rights; and (ii) file a subsequent show cause motion. We disagree.

In North Carolina, "[i]t is well-established that the issue of a court's jurisdiction over a matter may be raised at any time, even for the first time on appeal or by a court *sua sponte.*" *State v. Webber*, 190 N.C. App. 649, 650, 660 S.E.2d 621, 622 (2008). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Rodriguez v. Rodriguez*, 211 N.C. App. 267, 270, 710 S.E.2d 235, 238 (2011) (quotation marks and citation omitted). "When a court decides a matter without the court's having jurisdiction, then the whole proceeding is null and void, i.e., as if it had never happened." *Hopkins v. Hopkins*, 8 N.C. App. 162, 169, 174 S.E.2d 103, 108 (1970).

This Court has previously clarified that "[a]lthough it is axiomatic in custody disputes *between parents* that [v]isitation privileges are but a lesser degree of custody[,] when a grandparent is seeking visitation with grandchildren, a claim for visitation may be distinct from a claim for custody and standing requirements differ for each claim." *Rodriguez*, 211 N.C. App. at 273, 710 S.E.2d at 240 (second and third alteration in original)(quotation marks and internal citation omitted).

First, we discuss standing requirements when grandparents seek custody. Under N.C. Gen. Stat. § 50-13.1(a), grandparents have standing to intervene for custody when they "allege acts that would constitute '[parental] unfitness, neglect [or] abandonment,' or any other type of conduct so egregious as to result in [the parent's] forfeiture of his [or her] constitutionally protected status as a parent." *McDuffie v. Mitchell*, 155 N.C. App. 587, 591, 573 S.E.2d 606, 608–09 (2002) (second alteration in original).

Grandparents do not attain standing under N.C. Gen. Stat. § 50-13.1(a) when they merely argue they have been "estranged from the children for some time." *Id.* at 591, 573 S.E.2d at 609. Instead, they must allege specific facts showing parental unfitness, such as: (i) the parents have not provided "safe and suitable housing" for their children; (ii) the parents have not contributed to child support; (iii) the parents have not been involved in the children's upbringing; and (iv) the children are at "substantial risk of harm" from the parents. *Sharp*, 124 N.C. App. at 361, 477 S.E.2d at 260.[11]

---

11. In *Sharp*, the maternal grandparents filed a complaint against their daughter seeking custody of their grandchildren under N.C. Gen. Stat. § 50-13.1(a). *Id.* at 357, 477 S.E.2d at 258. The grandparents alleged she was unfit because she:

Next, we discuss standing requirements when grandparents seek visitation under N.C. Gen. Stat. § 50-13.2(b1) (2011). When "the custody of the child [is] still in issue and [is] being litigated by the parents, then [t]he grandparents . . . [have] standing to seek intervention under N.C. Gen. Stat. § 50-13.2(b1)." *Quesinberry v. Quesinberry*, 196 N.C. App. 118, 122, 674 S.E.2d 775, 778 (2009) (quoting *Smith v. Barbour*, 195 N.C. App. 244, 252, 671 S.E.2d 578, 584 (2009) (quotation marks omitted) (alterations in original)).[12] Under N.C. Gen. Stat. § 50-13.2(b1), grandparents need not prove lack of intact family since an ongoing parental custody dispute exists. *See Eakett*, 157 N.C. App. at 554, 579 S.E.2d at 489. The trial court may award grandparent visitation in the subsequent custody order at its discretion. *See* N.C. Gen. Stat. § 50-13.2(b1) (2011).

In the instant case, Mr. White argues the Grandparents did not have standing to file a show cause motion. We disagree.

First, the Grandparents had standing to seek custody when they filed their initial 3 August 2006 motion to intervene. There they alleged, *inter alia*, that: Mr. White "had not yet exercised visitation alone" with the child; and (ii) Mr. White is "not currently able to provide a stable home environment." These allegations, if proven, could support a finding of conduct inconsistent with parental status. *See Sharp*, 124 N.C. App. at 361, 477 S.E.2d at 260 (holding that failure to participate in a child's upbringing or provide "safe and suitable housing" for a child could rise to the level of parental unfitness). Thus, they initially had standing to

---

had not yet found suitable housing; [] had not provided a safe or stable home for the children; [] had relationships with several men and had moved around in both North Carolina and Pennsylvania; [] since the children resided with plaintiffs, she had not contributed to the support of the children; [] "there is a substantial risk of harm to the minor children if in the physical custody of the defendant-mother"; and [] she was not emotionally stable enough to care for the children.

*Id.* at 358, 477 S.E.2d at 258–59. The trial court dismissed the grandparents' claim for lack of subject matter jurisdiction because there was no ongoing custody proceeding and the children's family was intact. *Id.* at 358, 477 S.E.2d at 259. In *Sharp*, this Court reversed and remanded because the grandparents alleged sufficient facts regarding parental unfitness to give them standing to intervene for custody. *Id.* at 363, 477 S.E.2d at 262.

12. In *Quesinberry*, both the maternal and paternal grandparents sought visitation during an ongoing parental custody dispute. *Id.* at 119, 574 S.E.2d at 776. The trial court subsequently entered a consent judgment resolving custody issues between the parents. *Id.* at 120, 574 S.E.2d at 777. Less than a month later, it awarded visitation to both sets of grandparents. *Id.* There, we affirmed the trial court's grandparent visitation determination because the grandparents initially sought visitation during an ongoing parental custody dispute. *Id.* at 123–24, 574 S.E.2d at 779.

seek custody under N.C. Gen. Stat. § 50-13.1(a). *See McDuffie*, 155 N.C. App. at 591, 573 S.E.2d at 608–09.

The trial court addressed the Grandparent's motion to intervene in its 30 November 2006 temporary custody order. There, the district court: (i) temporarily transferred primary custody of the child from Ms. Wellons to Mr. White; and (ii) awarded the Grandparents visitation in lieu of custody.[13] Although the 4 April 2006 order had resolved all ongoing parental custody issues at the time, the district court created a new ongoing parental custody dispute when it transferred temporary primary custody to Mr. White. *See Quesinberry*, 196 N.C. App. at 122, 674 S.E.2d at 778 (holding that grandparents have standing to seek visitation under N.C. Gen. Stat. § 50-13.2(b1) during an ongoing custody dispute). At the subsequent 13 September 2007 hearing, the Grandparents dismissed their custody claim and instead sought only visitation under N.C. Gen. Stat. § 50-13.2(b1). Since there was a predicate ongoing dispute, the Grandparents had standing to seek visitation at the 13 September 2007 hearing. As a result, the trial court had jurisdiction to award them visitation in its 28 December 2007 custody order, and the Grandparents later had standing to enforce their visitation rights through their 22 September 2011 show cause motion. Therefore, the trial court did not err by declining to dismiss the Grandparents' show cause motion for lack of standing.

## C. Grandparent Visitation

**[2]** Next, Mr. White argues the trial court erred by granting the Grandparents visitation when: (i) he is a fit parent; (ii) the Grandparents initially intervened seeking custody, not visitation; and (iii) the Grandparents never filed a motion seeking visitation. In the alternative to this argument, Mr. White contends N.C. Gen. Stat. §§ 50-13.2(b1) and 50-13.5(j) are unconstitutional. Upon review, we dismiss for lack of jurisdiction.

In North Carolina, permanent child visitation and custody orders resolving all pending issues are generally final and appealable. Temporary custody and visitation orders, on the other hand, are interlocutory and not immediately appealable. *See Dunlap v. Dunlap*, 81 N.C. App. 675, 676, 344 S.E.2d 806, 807 (1986); *Berkman v. Berkman*, 106 N.C. App. 701, 702, 417 S.E.2d 831, 832 (1992) ("A temporary child custody order is

---

13. N.C. Gen. Stat. § 50-13.2(b1) allows a trial court's custody order to "provide visitation rights for any grandparent of the child as the court, in its discretion, deems appropriate." N.C. Gen. Stat. § 50-13.2(b1) (2011).

interlocutory and does not affect any substantial right . . . which cannot be protected by timely appeal from the trial court's ultimate disposition . . . on the merits." (quotation marks and citation omitted) (first alteration in original)). However,

> [t]he trial court's mere designation of an order as "temporary" is not sufficient to make the order interlocutory and nonappealable. Rather, an appeal from a temporary custody order is premature only if the trial court: (1) stated a clear and specific reconvening time in the order; and (2) the time interval between the two hearings was reasonably brief.

*Brewer v. Brewer*, 139 N.C. App. 222, 228, 533 S.E.2d 541, 546 (2000). Thus, when a custody or visitation order resolves all pending issues and does not state a clear and specific reconvening date within a reasonably brief time, the order is final and appealable. *See id.*

Once a trial court issues a final appealable child custody or visitation order, it becomes the law of the case. The law of the case doctrine "provides that when a party fails to appeal [that order], the decision below becomes 'the law of the case' and cannot be challenged in subsequent proceedings in the same case." *Boie v. D.W.I.T.*, 195 N.C. App. 118, 122, 670 S.E.2d 910, 912 (2009). Still, "when a tribunal is faced with a question of its subject matter jurisdiction, . . . the goals of the law of the case doctrine are outweighed by the overriding importance and value of a correct ruling on this issue." *Watts v. N.C. Dep't of Envtl. & Natural Res.*, No. COA09-1499, 2010 WL 2817055, at *3 (N.C. Ct. App. 20 July 2010); *see also Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003); *Pub. Int. Res. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 118 (3rd Cir. 1997).

The jurisprudential desire for finality giving rise to the law of the case doctrine also underlies North Carolina's prohibition on collateral attacks of previous orders. "A collateral attack is one in which a plaintiff is not entitled to the relief demanded in the complaint unless the judgment in another action is adjudicated invalid." *Thrasher v. Thrasher*, 4 N.C. App. 534, 540, 167 S.E.2d 549, 553 (1969) (quotation marks and citation omitted). North Carolina case law clearly prohibits this type of argument. *See Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 676, 360 S.E.2d 772, 777 (1987) (holding that the proper route to remedy erroneous orders is appeal, not collateral attack); *In re Wheeler*, 87 N.C. App. 189, 193, 360 S.E.2d 458, 461 (1987) (holding that for parties seeking relief from a prior erroneous order, "the proper avenues [are] 1) appeal . . ., or

2) a motion for relief pursuant to N.C. Gen. Stat. Sec. 1A-1, Rule 60."). For instance, parties may not defend themselves in contempt proceedings by collaterally attacking the underlying judgment or order they allegedly violated. *See Wells v. Wells*, 92 N.C. App. 226, 229, 373 S.E.2d 879, 882 (1988) (holding that a plaintiff held in contempt for failure to pay alimony could not collaterally attack the underlying alimony judgment).

In the present case, Mr. White argues the trial court erred by granting the Grandparents visitation when: (i) he is a fit parent; (ii) the Grandparents initially intervened seeking custody, not visitation; and (iii) the Grandparents never filed a motion seeking visitation. Alternatively, he contends N.C. Gen. Stat. §§ 50-13.2(b1) and 50-13.5(j) are unconstitutional. Upon review, we conclude we do not have jurisdiction to decide these arguments based on the law of the case doctrine and the prohibition on collateral attacks.

Here, Mr. White had a right to appeal the 28 December 2007 order granting him custody and granting the Grandparents visitation. Specifically, since the order provided a permanent custody and visitation schedule and did not state a clear and specific reconvening date within a reasonably brief time, the order was final and appealable. *Brewer*, 139 N.C. App. at 228, 533 S.E.2d at 546. When Mr. White failed to appeal the 28 December 2007 order it became the law of case, only subject to modification in subsequent orders upon a showing of a change of circumstances. *See Gower v. Aetna Ins. Co.*, 281 N.C. 577, 579, 189 S.E.2d 165, 167 (1972) ("Since neither party appealed, the judgment entered . . . became the law of the case and established the respective rights of the parties to that action."); *Premier Plastic Surgery Ctr., PLLC v. Bd. of Adjustment for Town of Matthews*, __ N.C. App. __, __, 713 S.E.2d 511, 518 (2011). Thus, Mr. White may not now challenge that order in his appeal from a related contempt order several years later.

Furthermore, the law of the case doctrine applies here because, unlike his standing argument, Mr. White's arguments about grandparent visitation do not implicate subject matter jurisdiction. First, mere procedural deficiencies like the ones Mr. White alleges are not jurisdictional. *See, e.g., In re K.J.L.*, 363 N.C. 343, 346, 677 S.E.2d 835, 837 (2009). Second, as to Mr. White's constitutional challenge, this Court has previously declined to consider arguments that parties should not have been found in contempt because the statutes on which the underlying judgment was based were unconstitutional. *See State ex rel. N.C. State Bd. of Registration for Prof'l Engineers & Land Surveyors v. Testing Laboratories, Inc.*, 52 N.C. App. 344, 347–48, 278 S.E.2d 564, 565–66 (1981). Consequently, we conclude the law of the case doctrine

prohibits Mr. White from now challenging the 28 December 2007 visitation order in his appeal of the 5 July 2012 contempt order.

Additionally, Mr. White's arguments about grandparent visitation constitute impermissible collateral attacks on the 28 December 2007 custody and visitation order. Here, Mr. White argues the trial court erred in its 5 July 2012 contempt order by reinstating the Grandparents' visitation schedule from the 28 December 2007 order. Thus, his argument necessarily depends on his challenge to the validity of the 28 December 2007 order. Our case law prohibits this type of collateral attack. *See Thrasher*, 4 N.C. App. at 540, 167 S.E.2d at 553. In fact, our case law has expressly prohibited parties in contempt proceedings from collateral attacking the underlying orders they allegedly violated. *See, e.g., Wells*, 92 N.C. App. at 229, 373 S.E.2d at 882. In light of this precedent, we dismiss Mr. White's arguments regarding grandparent visitation as impermissible collateral attacks.

Consequently, based on the law of the case doctrine and the prohibition on collateral attacks, we dismiss Mr. White's arguments about grandparent visitation for lack of jurisdiction.

### D.  Contempt

**[3]** Third, Mr. White argues the district court erred by holding him in civil contempt. We agree.

"The purpose of civil contempt is not to punish but to coerce the defendant to comply with a court order." *Cox v. Cox*, 133 N.C. App. 221, 226, 515 S.E.2d 61, 65 (1999); *see also Bethea v. McDonald*, 70 N.C. App. 566, 570, 320 S.E.2d 690, 693 (1984). This Court has elaborated that:

> [a] defendant's failure to comply with a court order [must be] willful. Then, following from this concept, for civil contempt to be applicable, the defendant must have the present ability to comply with the court order. Moreover, our Courts have required the trial court to make a specific finding as to the defendant's ability to comply during the period in which he was in default.

*Scott v. Scott*, 157 N.C. App. 382, 393–94, 579 S.E.2d 431, 439 (2003) (internal citations omitted). Furthermore, a contempt order "must specify how the person may purge himself of the contempt." N.C. Gen. Stat. § 5A-22(a) (2011); *see also Cox*, 133 N.C. App. at 226, 515 S.E.2d at 65 (holding that a contempt order must "clearly specify what the defendant can and cannot do"); *Scott*, 157 N.C. App. at 394, 579 S.E.2d at 439 (holding that requirements to purge civil contempt may not be "impermissibly vague").

In the instant case, the district court erred by failing to provide Mr. White a method to purge his contempt.

On 5 July 2012, the district court "declared [Mr. White] to be in direct and wilful [sic] civil contempt of the prior Orders of the Court." It suspended Mr. White's arrest based on the following condition: "Defendant can purge his contempt by fully complying with the terms of the [30 March 2012] Interim Order, the prior Orders of 28 December 2007 and 27 July 2010 . . . , and this Order." The order did not establish a date after which Mr. White's contempt was purged or provide any other means for Mr. White to purge the contempt.

We have previously reversed similar contempt orders. For instance, in *Cox* a contempt order stated the defendant could purge her contempt by not:

> plac[ing] either of the minor children in a stressful situation or a situation detrimental to their welfare. Specifically, the defendant is ordered not to punish either of the minor children in any manner that is stressful, abusive, or detrimental to that child.

*Cox*, 133 N.C. App. at 226, 515 S.E.2d at 65. There, we reversed because the trial court failed to "clearly specify what the defendant can and cannot do to the minor children in order to purge herself of the civil contempt." *Id.*

Similarly, in *Scott* a contempt order stated:

> Defendant may postpone his imprisonment indefinitely by *(1) enrolling in a Controlled Anger Program approved by this Court on or before August 1, 2001 and thereafter successfully completing the Program; (2) by not interfering with the Plaintiff's custody of the minor children and (3) by not threatening, abusing, harassing or interfering with the Plaintiff or the Plaintiff's custody of the minor children[.]*

*Scott*, 157 N.C. App. at 393, 579 S.E.2d at 438 (alteration in original). There, although we indicated the requirement to attend a Controlled Anger Program may "comport[] with the ability of civil contemners to purge themselves," we reversed because the other two requirements were "impermissibly vague." *Id.* at 394, 579 S.E.2d at 439.

In the case at hand, the district court did not "clearly specify what [Mr. White] can and cannot do" to purge himself of contempt. *Cox*, 133

N.C. App. at 226, 515 S.E.2d at 65. Although the district court referenced previous orders containing specific provisions, it did not: (i) establish when Mr. White's compliance purged his contempt; or (ii) provide any other method for Mr. White to purge his contempt. We will not allow the district court to hold Mr. White indefinitely in contempt. Consequently, we reverse the portion of the 5 July 2012 order holding Mr. White in civil contempt.

## IV. Conclusion

In conclusion, we first determine the Grandparents had standing. Second, we dismiss Mr. White's arguments regarding grandparent visitation for lack of jurisdiction. Lastly, the trial court erred by failing to provide Mr. White a method to purge his contempt.

AFFIRMED in part, DISMISSED in part, and REVERSED as to contempt.

Judges STEELMAN and GEER concur.