NO. COA13-986

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

SUZIE JANE BURAKOWSKI,
        Plaintiff,

        v.                              Gates County
                                        No.  10-CVD-37
STEVEN ALLEN BURAKOWSKI,
        Defendant.


Appeal by defendant from contempt order entered 25 March 2013 by Judge Eula E. Reid in District Court, Gates County. Heard in the Court of Appeals 9 January 2014.

> *Mitchell S. McLean, for plaintiff-appellee.*
>
> *Davis Law Office, by Mary Elizabeth Davis, for defendant-appellant.*


STROUD, Judge.


Defendant appeals order allowing plaintiff's motion for contempt, awarding plaintiff certain annuity payments, and denying defendant's motion for sanctions. For the following reasons, we reverse and remand in part.

## I.  Background

In 2008, plaintiff and defendant were divorced in Kentucky by a decree of dissolution of marriage which incorporated a separation agreement. The separation agreement, entered on 8

October 2008, included a provision regarding the division of defendant's retirement benefits as follows:

> Parties agree that wife is entitled to one half of the husband's retirement account, which specifically is TSP and FERS accounts, as of the date of the entrance of the final decree of dissolution in this case. Wife shall execute any orders as directed by the Court to effectuate said division including but not limited to any QDROs.[1]

Thereafter, on 19 November 2008, the parties entered into an Amended Separation Agreement ("Amended Agreement") which was also incorporated into the decree of dissolution of marriage. The Amended Agreement further addressed defendant's retirement benefits as follows:

> The parties agree that wife is entitled to one half (½) of husband's Retirement Accounts, more specifically his TSP account and FERS account. His TSP account shall be divided, with wife to receive ½ the value thereof as of the date of the entrance of the Final Decree of Dissolution in this case. Wife shall execute any orders as directed by the Court to effectuate said division, including but not limited to any Qualified Domestic Relations Order (QDRO). Husband's *FERS account* shall be divided, with wife to receive ½ of the amount in said account as of the date of the entrance of

---

[1] The original agreement is not in our record but this provision was read out loud at a hearing by defendant's attorney and plaintiff testified that this was what the separation agreement stated. There is no dispute about this provision, which was later amended.

the Final Decree in this case. Both parties understand that wife will not receive payment of this amount until husband retires. Wife shall execute any Orders necessary to effectuate division of the same. Wife shall also receive ½ of the *supplemental annuity* to be received by husband from the date of his retirement or when he reaches age 57, whichever shall come earlier[.]

(Emphasis added.) Thus, the Amended Agreement provided additional details as to the portions of the defendant's retirement benefits that plaintiff would receive and how the distributions would be accomplished.

In 2010, a North Carolina trial court entered a consent order which domesticated the Kentucky modified decree of dissolution of marriage making it "enforceable as a valid Order of the State of North Carolina, so the terms of the Amended Agreement became enforceable as a court order. Later in 2010[2], plaintiff filed a verified "MOTION IN THE CAUSE AND FOR CONTEMPT" ("2010 Motion") seeking to hold defendant in contempt under the terms of the Amended Agreement regarding her health

---

[2] Both parties state that plaintiff's motion was made in 2011; however, the file stamp is illegible and the date written in by plaintiff's attorney indicates the motion was made in 2010. As such, we will refer to this motion as the 2010 Motion noting that whether it was filed in 2010 or 2011 is irrelevant to the issues on appeal. There is no doubt that it preceded the motion and order at issue here.

insurance benefits, which are not at issue in this appeal, and also seeking "clarification" of the provisions of the Amended Agreement as to defendant's retirement benefits. Plaintiff alleged:

> 7. That the Amended Separation Agreement provided for the plaintiff to receive one half of the defendant's FERS retirement benefits, upon his retirement. A problem has arisen regarding the Office Of Personal Management's interpretation of the provision of the Amended Separation Agreement that divides defendant's FERS retirement annuity. The OPM has interpreted the wording of the Amended Separation Agreement contrary to the clear intent of the parties, because the term "retirement account" was used rather than the term "retirement annuity." The intent of the parties was clearly for the plaintiff to receive one half of the monthly annuity payments that defendant is entitled to receive, pursuant to his FERS retirement benefit/annuity. However, because the Amended Separation Agreement did not us[e] the specific word "annuity", OPM has construed the Amended Separation Agreement as only giving her a one half interest in the set contributions that were made to the FERS account after the date of the October 10, 2008 Decree, which was only for a one year period, as indicated in document attached hereto as "Exhibit 2".

> 8. That the court should clarify the wording of the Amended Separation Agreement to conform with the clear intentions of the parties and should specify that the OPM shall divide and apportion the defendant's monthly FERS retirement annuity payment so that the plaintiff shall begin receiving one

half of these monthly annuity payments. The court should also require that the defendant reimburse the plaintiff for the plaintiff's one half share of each monthly FERS annuity payment that she has not received since the date the defendant retired and began receiving his FERS annuity monthly payment.

. . . .

11. That the plaintiff has requested and demanded of the defendant that he comply with the health insurance provisions of the Amended Separation Agreement and has requested and demanded of the defendant that he cooperate in amending the prior Amended Separation Agreement to specify that plaintiff is entitled to receive one half of the defendant's monthly FERS retirement annuity. However, the defendant has failed and refused to abide or comply with these requests and demands, which has required the plaintiff to initiate this Motion to enforce the defendant's compliance with the health insurance provision and to clarify the FERS annuity provision, to conform with the clear intent of the parties.

Plaintiff then specifically requested that the trial court "clarif[y]" the Amended Agreement to provide specifically that she would receive one half of the defendant's monthly "FERS retirement annuity payment" and that OPM be ordered to pay this directly to plaintiff:

4. That the retirement provision of the Amended Separation Agreement be clarified to specify that the plaintiff is entitled to receive one half of the defendant's monthly FERS retirement annuity payment, and to order the OPM to begin

> directing one half of each monthly annuity payment to the plaintiff. Also, the defendant be ordered to reimburse the plaintiff for the plaintiff's one half share of each monthly FERS retirement annuity payment that the defendant has received since his retirement.

In other words, because the Amended Agreement referred specifically only to the defendant's "FERS account" and "supplemental annuity[,]" the OPM had taken the position that the Amended Agreement did not permit it to pay the *basic annuity* benefits to plaintiff. Plaintiff testified at the hearing on her 2010 Motion that defendant had already retired and one-half of his TSP or Thrift Savings Plan, had been paid to her in the lump sum of $119,030.00, and an additional $7,400.00 had been paid over the course of six months as her one-half interest from the FERS account.[3] However, plaintiff was not being paid a one-half share of the *basic annuity,* so she requested the trial court to "clarif[y]" that the parties actually meant for the term "FERS account" to include the *basic annuity* so that the OPM

---

[3] The parties' use of informal terminology to identify the TSP retirement account, FERS retirement account, and the two FERS annuities, in the Amended Agreement, before the trial court, and in their briefs before this Court has made it challenging to determine at times exactly which asset the parties are referring to, but ultimately the accounts and annuities as identified in this opinion are consistent with those found by the trial court, and these particular findings are not challenged.

would pay one-half of the *basic annuity* benefits to her. Plaintiff also requested that defendant be required to pay to her the arrearages of her one-half of the *basic annuity* payments that had accrued up to that time.

In 2011, the trial court entered an order ("2011 Order") after a hearing on plaintiff's 2010 Motion and found:

> 11. That the defendant currently receives a *gross regular monthly FERS annuity of $2,327.00. He also receives an additional FERS supplemental annuity of $915.00 per month.* The defendant is also gainfully employed at Fort Lee and testified that he earns $80,000.00 per year from his employment, and began his employment in June, 2010.
>
> . . . .
>
> 22. That the plaintiff contends that the Amended Separation Agreement should be modified and clarified to require the defendant to pay her ½ of his FERS regular retirement benefits. However, the court deems that the Amended Separation Agreement is unambiguous in regards to the plaintiff's right concerning the defendant's retirement benefits and will not modify or supplement the provisions contained therein.
>
> 23. *That the specific wording of the Amended Separation Agreement, as agreed to and admitted by each party in open court, provides that the plaintiff is entitled to receive ½ of the defendant's monthly FERS supplemental annuity payments, less ½ of the taxes.*
>
> 24. That the defendant started

receiving his monthly FERS supplemental annuity payments on March 1, 2010.

25. That the defendant currently receives the sum of $915.00 per month as FERS supplemental annuity payments. The amount of taxes are deducted is $269.60 per month. Therefore, the plaintiff's net ½ share of the current monthly supplemental annuity payment is $322.70. For the 13 months that the defendant received this supplemental annuity payment up to the March 25, 2011 court date, the total net payment due to the plaintiff from the defendant, for her share of the supplemental annuity payments, is $4,195.10.

26. That the total amount of the plaintiff's share of the defendant's monthly supplemental annuity payments, as of July 31, 2011, will be $5,485.90.

27. That the defendant should be ordered to directly pay the plaintiff, each month, her ½ share of his supplemental annuity payment, less taxes, the current net monthly amount due plaintiff being $322.70, by the 5th day of each month, beginning August 5, 2011.

28. That the defendant has the present financial ability to pay the plaintiff the reimbursement/arrearage that he owes her for her ½ share of his supplemental annuity payments, dating back to March 1, 2010. The amount of the arrearage/reimbursement owed by the defendant to the plaintiff, through July 31, 2011, is $5,485.90. The defendant has the present financial ability to pay to the plaintiff, provided that he is allowed to pay this reimbursement/arrearage amount in 6 equal monthly installments, with the first installment being due and payable by September 5, 2011.

(Emphasis added.)

The trial court concluded that plaintiff would receive one-half of the *supplemental annuity* payments, past and future:

> 16. That the plaintiff's share of the defendant's monthly FERS *supplemental annuity* payments that he has received since March 1, 2010, through the March 25, 2011 court date, is $4,195.10. The total amount of plaintiff's share of the defendant's monthly supplemental annuity payments through July 31, 2011, will be $5,485.90.
>
> 17. That the defendant has the present financial ability to reimburse the plaintiff for her ½ share of the *supplemental annuity* payments defendant has received since March 1, 2010, provided that he is allowed to pay this reimbursement/arrearage total in 6 equal installments, payable monthly, with the first installment payment being due September 5, 2011.

(Emphasis added.)

The trial court thus ordered payment of the *supplemental annuity* benefits, including arrearages as well as future payments:

> 9. . . . The total *supplemental annuity* reimbursement that the defendant owes the plaintiff, through July 31, 2011, is $5,485.90. The total arrearage/reimbursement that the defendant owes the plaintiff, through July 31, 2011, is $13,041.56. Defendant shall pay plaintiff the full sum of $13,041.56 in six monthly installments, beginning with a first

monthly installment due September 5, 2011, in the amount of $2,173.59. The defendant shall make an equal payment of $2,173.59 to the plaintiff on October 5, 2011, November 5, 2011, December 5, 2011, and January 5, 2012. The defendant shall make a final arrearage installment payment of $2,173.61 to plaintiff on February 5, 2012.

10. That willful violation of the provisions of this Order shall be punishable by the contempt of court sanctions of this court.

(Emphasis added.) In sum, the 2011 Order did not "clarif[y]" the Amended Agreement as plaintiff requested nor did it order defendant to pay any *basic annuity* payments, but instead only ordered payments as to the "*supplemental annuity*[.]" (Emphasis added.) The record does not indicate that either party appealed from this order.

In 2012, plaintiff filed a verified "MOTION FOR CONTEMPT" ("2012 Motion") which requested that defendant be held in contempt for failure to pay her one-half of his *basic annuity* payments under the Amended Agreement, alleging:

6. That the defendant should be found to be in willful contempt of court for his willful violation of the provisions of the aforesaid Amended Separation Agreement, which has been incorporated into the Divorce Decree entered in this cause, in that:
A. The Amended Separation Agreement provided for the plaintiff to receive one half of the defendant's FERS retirement account, upon his

retirement.

B.  The defendant's FERS retirement account encompasses the retirement annuity that provides defendant with monthly annuity payments.

C.  The intent of the parties was clearly for the plaintiff to receive one half of the monthly annuity payments that defendant is entitled to receive, pursuant to his FERS retirement account.

D.  The defendant has willfully failed and refused to pay plaintiff one half of his monthly retirement annuity payment since his retirement, as required by the aforesaid Amended Separation Agreement, despite demand from the plaintiff.

E.  The only portion of the defendant's FERS retirement account that plaintiff has received is one half of the direct contributions that were made by the defendant into his FERS account after the date of the October 10, 2008 Decree, and prior to the retirement date of the defendant.

F.  The specific wording of the Amended Separation Agreement, that was incorporated into the October 10, 2008 Decree, provided for the plaintiff to receive one half of the defendant's "retirement account", not just one half of the direct contributions made between October 10, 2008 and the date of the defendant's retirement.  The said Amended Separation Agreement, as incorporated into the Decree, required the defendant to provide plaintiff with one half of his full "retirement account" upon retirement, which emcompasses and includes the monthly FERS retirement annuity payment received by the defendant.

G.  The purposes of the Amended

Separation Agreement can still be accomplished by the court entering an Order finding the defendant to be in willful contempt of court and imposing such sanctions against the defendant as deemed appropriate.

H. An appropriate sanction against the defendant for his willful violation of the provisions of the Amended Separation Agreement, due to his willful failure and refusal to provide the plaintiff with one half of his FERS retirement account since his date of retirement, would be for the court to specifically order the defendant to do the following:

1. Order the defendant to reimburse the plaintiff for plaintiff's one half share of each monthly FERS annuity payment that he has received since the date the defendant retired and began receiving his FERS annuity monthly payment.

2. Order the defendant to directly forward the plaintiff her one half share of each prospective monthly FERS annuity payment that he receives.

3. Order the defendant to pay the plaintiff an award of reasonable attorney fees to reimburse her for her costs and attorney fees incurred in connection with the enforcement of the retirement account provisions of the aforesaid Amended Separation Agreement and Decree.

7. That the Amended Separation Agreement had a "default" provision that required that in the event either party defaults in or breaches any of his or her respective obligations and duties as

contained in the Agreement, the defaulting or breaching party shall be responsible for and pay the injured party, in addition to such damages as any court may award, all of his or her attorney fees, court costs and other related expenses incurred to enforce the provisions contained in the Amended Separation Agreement against the defaulting party.

8. That the defendant has defaulted on his obligations pursuant to the Amended Separation Agreement by his willful failure to abide and comply with the retirement account provisions of said Agreement, by his failure and refusal to separate and apportion the plaintiff's one half of his monthly FERS retirement annuity payment to plaintiff. Therefore, the defendant should be required to reimburse the plaintiff for all of her attorney fees, court costs and other related expenses connected with this proceeding.

9. That the plaintiff has requested and demanded of the defendant that he comply with the retirement account provisions of the Amended Separation Agreement and has requested and demanded of the defendant that he provide her with her one half share of his monthly FERS retirement annuity payment. However, the defendant has failed and refused to abide or comply with these requests and demands, which has required plaintiff to initiate this Motion to enforce the defendant's compliance with the retirement account provisions and to secure plaintiff's receipt of her one half share of the defendant's monthly FERS retirement annuity payment, retroactive to the date of the defendant's retirement.

Plaintiff requested that defendant be held in contempt "for his willful violation of

the provisions of the aforesaid Amended Separation Agreement" and that he be requiredin order to purge himself of contempt, to do the following:

A. Reimburse the plaintiff for her one half share of each monthly FERS retirement annuity payment that the defendant has received since his date of retirement.

B. The defendant be required to henceforth directly pay plaintiff her one half share of each monthly FERS retirement annuity payment that he receives.

C. The defendant be required, in order to purge himself of contempt, to pay the plaintiff an award of reasonable attorney fees to defray her costs and attorney fees incurred in connection with this Motion, consistent with the "default" provision of the Amended Separation Agreement, as incorporated into the said Decree.

Thus, plaintiff again requested one half of defendant's *basic annuity* payment, based on the provisions of the Amended Agreement. Plaintiff's motion was not based upon the 2011 Order, nor did it mention this order in which the trial court had already denied this same substantive relief.

Defendant responded to plaintiff's 2012 Motion with "NOTICE AND MOTION FOR RULE 11 SANCTIONS" arguing that

Plaintiff's current Motion for Contempt is barred by collateral estoppel and/or Res Judicata, said matter having been subject to previous litigation . . . [in] 2011. The matters raised in Plaintiff's Motion are substantially identical to matters ruled

upon by the . . . [trial court's 2011 Order]. Defendant avers that Plaintiff should be responsible for his attorneys fees in defending against her currently pending Motion.

WHEREFORE, Defendant respectfully requests that this Court dismiss with prejudice Plaintiff's Motion and the Order to Show Cause set for . . . 2012.

On 25 March 2013, the trial court entered a "CONTEMPT ORDER" ("2013 Order") finding defendant in willful contempt based on his failure to comply with the Amended Separation Agreement, for the following reasons:

A. The Amended Separation Agreement provided for the plaintiff to receive one half of the defendant's FERS retirement accounts, upon his retirement.

B. Based upon the testimony of the plaintiff and defendant at trial, it was clear understanding of each party that the FERS accounts included the defendant's basic annuity payments as well as the supplemental annuity payments.

C. Based upon the Amended Separation Agreement and the understanding of each party, as testified to at trial, the plaintiff was to receive from the defendant one half of the monthly FERS basic annuity payments that the defendant received.

D. Despite the provisions of the Amended Separation Agreement, and the understanding of the defendant that the plaintiff was to receive one half of his monthly FERS basic annuity, he has failed and refused to pay plaintiff one half of his monthly FERS basic annuity

payment since his retirement, despite demand from the plaintiff that he do so.

E. The plaintiff has received one half of the direct contributions that were made by the defendant into his FERS accounts after the date of the October 10, 2008 Decree, and prior to the retirement date of the defendant, and one half of the FERS supplemental annuity, per prior Order of this court entered March 25, 2011[.]

F. The specific wording of the Amended Separation Agreement, that was incorporated into the October 10, 2008 Decree, provided for the plaintiff to receive one half of the defendant's "retirement accounts", not just one half of the direct contributions made between October 10, 2008 and the date of the defendant's retirement. The said Amended Separation Agreement, as incorporated into the Decree, required the defendant to provide plaintiff with one half of his full "retirement accounts" upon retirement, which encompasses and includes the monthly FERS basic annuity payments received by the defendant.

G. The defendant began receiving his monthly FERS basic annuity payments on March 1, 2010 and has continued to receive these monthly payments. Plaintiff was entitled to receive one half of the defendant's monthly FERS basic annuity payments from the March 1, 2010 date that the defendant began receiving these payments; however, the defendant has not provided the plaintiff with any portion of the monthly FERS basic annuity payments that he has received since March 1, 2010.

H. The defendant has received a gross

monthly basic FERS annuity payment of $2,327.00. The plaintiff is entitled to one half of each monthly payment, related back to March 1, 2010, when the defendant began receiving his monthly FERS basic annuity payments.

I. The defendant willfully failed and refused to abide by the terms of the Amended Separation Agreement by failing and refusing to pay the plaintiff her one half portion of his monthly FERS basic annuity payments that he has received since March 1, 2010.

J. The plaintiff has requested and demanded of the defendant that he comply with the retirement account provision of the Amended Separation Agreement and has requested and demanded of the defendant that he provide her with her one half share of his monthly FERS basic retirement annuity payments. However, despite these requests, and the defendant's knowledge that the monthly FERS basic annuity payments were included in, and a part of, his FERS accounts that the plaintiff was entitled to receive one half of, he failed and refused to pay her any portion of the monthly basic annuity payments since March 1, 2010, thereby requiring the plaintiff to initiate this motion to enforce the defendant's compliance.

K. The purpose of the Amended Separation Agreement can still be accomplished by the court entering an Order finding the defendant to be in willful contempt of court and imposing the sanctions against the defendant as set forth in the Decree of this Order.

9. That the defendant has the current financial ability to pay the plaintiff one half of his monthly FERS basic annuity

payments and has the present financial ability to reimburse the plaintiff for her share of the past due basic annuity payments that he failed and refused to pay her since March 1, 2010, based upon the repayment schedule as set forth in the Decree of this Order.

10. That the defendant receives a gross monthly basic FERS annuity payment of $2,327.00. He also receives an additional monthly FERS supplemental annuity payment of $915.00, but of this amount he pays $322.70 per month to the plaintiff, pursuant to the prior Order of this court. The defendant is also gainfully employed and earns an annual income of approximately $80,000.00 per year.

11. That an appropriate sanction against the defendant for his willful violation of the provisions of the Amended Separation Agreement, due to his willful failure and refusal to pay the plaintiff her one half share of his monthly FERS basic annuity since the date of his retirement, would be for the defendant to directly pay the plaintiff for her one half share of each prospective monthly FERS basic annuity payment that he receives, within five days of the date that he receives each monthly payment.

12. That an additional appropriate sanction against the defendant for his willful violation of the provisions of the Amended Separation Agreement would be for the court to order the defendant to reimburse the plaintiff for her one half share of each monthly FERS basic annuity payment that he has received since the defendant began receiving his payments on March 1, 2010, pursuant to the repayment schedule as set forth in the Decree of this Order.

13. That the defendant has received his $2,327.00 per month FERS basic annuity payment since March 1, 2010. The plaintiff's one half share of each of these monthly payments is $1,163.50. As of April 30, 2013, the defendant will owe the plaintiff an arrearage of $45,376.50 for the plaintiff's one half share of the defendant's monthly FERS basic annuity payments since March 1, 2010.

14. That as a sanction against the defendant for his willful violation of the provisions of the Amended Separation Agreement, he should be required to directly pay the plaintiff the sum of $500.00 per month, beginning May 1, 2013, to be applied toward the defendant's arrearage, in addition to the $1,163.50 that the defendant is to pay to the plaintiff each month for her one half share of the ongoing monthly FERS basic annuity payments.

15. That the defendant has the present financial ability to pay the plaintiff the sum of $500.00 per month to be applied toward his aforesaid arrearage owed to the plaintiff, and has the present financial ability to pay the plaintiff the sum of $1,163.50 per month, as plaintiff's one half share of his ongoing monthly FERS basic annuity payments.

16. That the plaintiff has waived and abandoned her claim against the defendant for attorney fees in this proceeding.

17. That the defendant's Motion For Sanctions should be denied in that the prior Order of this court did not serve as res judicata for the issues determined in this proceeding. The issue of whether or not the plaintiff is entitled to receive one half of

the defendant's monthly FERS basic annuity was not fully litigated and decided at the prior hearing in this cause on March 25, 2011.

The trial court concluded:

3. That the defendant is in willful contempt of court for his willful violation of the provisions of the aforesaid Amended Separation Agreement, which has been incorporated into the Divorce Decree entered in this cause, due to his willful failure to pay the plaintiff her one half share of his monthly FERS basic annuity payments that he has received since March 1, 2010.

4. That the purposes of the Amended Separation Agreement can still be accomplished by the court entering an Order finding the litigated or decided as a result of the court's prior ruling in the hearing in this matter on March 25, 2011.

The trial court ordered:

1. That the defendant is in willful contempt of court for his willful noncompliance with the provisions of the Amended Separation Agreement, due to his willful failure to pay the plaintiff her one half share of his monthly FERS *basic annuity* payments that he has received since March 1, 2010.

2. That as a sanction against the defendant, in order for him to purge himself of contempt, he shall pay directly to the plaintiff one half of his gross monthly FERS *basic annuity* payments within five days of the date that he receives each payment. The defendant's initial payment to the plaintiff shall be paid on or before five days from the date he receives his FERS *basic annuity*

payment for May, 2013, and he shall continue to pay the plaintiff her one half share of each *basic annuity* payment within five days of the date he receives each monthly payment thereafter.

3. That the current monthly amount that the defendant shall pay the plaintiff, as the plaintiff's one half share of defendant's monthly FERS *basic annuity*, shall be $1,163.50. However, said monthly payment shall increase or decrease accordingly due to any increases or decreases in the monthly FERS *basic annuity* payments that the defendant receives.

4. That as a further sanction against the defendant, in order for him to purge himself of contempt, he shall pay the plaintiff the sum of $45,376.50, which represents the plaintiff's one half share of the defendant's monthly FERS *basic annuity* payments that he has received since March 1, 2010 through April 30, 2013. The defendant shall pay this arrearage directly to the plaintiff at the rate of $500.00 per month, until the full arrearage has been paid. The initial $500.00 monthly arrearage payment shall be due and payable from the defendant to the plaintiff on or before May 1, 2013 with an equal $500.00 arrearage payment being due on or before the first day of each month thereafter, until the full $45,376.50 arrearage has been paid.

5. That the plaintiff's claim against the defendant for attorney fees in this proceeding has been waived and abandoned.

6. That the defendant's Motion For Sanctions against the plaintiff is denied.

7. That willful violation of the provisions of this Order shall be punishable

by the contempt of court sanctions of this court.

8.  That this cause is retained by the court for such other and further Orders as may be deemed just and proper.

(Emphasis added.)  Thus, based upon the Amended Agreement, the trial court ordered defendant be held in contempt for failing to pay plaintiff one-half of payments received from the *basic annuity* since his retirement, ordered defendant to begin paying plaintiff one-half of his *basic annuity* payments, ordered defendant to pay arrearages based on his previous failure to pay plaintiff the *basic annuity* payment, and denied defendant's motion for sanctions.[4]  Defendant appeals the 2013 Order.

## II.  2013 Order

Both plaintiff and defendant have inaccurately labeled various requests and claims both before the trial court and this Court.  For example, plaintiff requested that the trial court "clarify the wording of the" Amended Agreement, although her motion would more properly be called a request for reformation, *see Metropolitan Property and Cas. Ins. Co. v. Dillard,* 126 N.C.

---

[4] In denying defendant's motion for sanctions the trial court also found that "[t]he issue of whether or not the plaintiff is entitled to receive one half of the defendant's monthly FERS basic annuity was not fully litigated and decided at the prior hearing in this cause on March 25, 2011."

App. 795, 798, 487 S.E.2d 157, 159 (1997) ("Reformation is a well-established equitable remedy used to reframe written instruments where, through mutual mistake or the unilateral mistake of one party induced by the fraud of the other, the written instrument fails to embody the parties' actual, original agreement. . . . Negligence on the part of one party which induces the mistake does not preclude a finding of mutual mistake. In other words, the fact that the mistake arises because the party who is seeking the reformation supplied the incorrect information does not make the mistake unilateral." (citations, quotation marks, and brackets omitted)), and defendant sought a form of relief that is not even available when he requested a dismissal of a motion, rather than a denial of said motion. *See generally* N.C. Gen. Stat. § 1A-1, Rule 12(b) (2011) (regarding the dismissal of claims, not other motions). Yet it is clear that both parties knew and understood the substantive requests or challenges the other was making and both parties have addressed these issues, so we will simply address the issues on appeal in substance, rather than attempting to use the titles which the parties proposed in their arguments both before the trial court and this Court. *See generally In re Testamentary Tr. of Charnock*, 158 N.C. App. 35,

39, 579 S.E.2d 887, 890 (2003) ("It is the substance of the application, or petition, and the relief which is sought thereunder that determines its true nature, not the title appended thereto by the petitioner. It has long been the law that the nature of the action is not determined by what either party calls it, but by the issues arising on the pleadings and by the relief sought. We will, therefore, undertake our own inquiry into the . . . issues arising on the pleadings and the relief sought in appellants' petition." (citation, quotation marks, and brackets omitted)), *aff'd*, 358 N.C. 523, 597 S.E.2d 706 (2004).

In substance, defendant contends that the trial court erred in ordering him to pay plaintiff one-half of his *basic annuity* because plaintiff was barred from raising that issue in her 2012 Motion since the trial court had already denied this same relief in the 2011 Order; in addition, the trial court also erred in finding defendant to be in contempt for failing to do something he had never been ordered to do and in denying defendant's motion for sanctions based on the issue of the *basic annuity*. Plaintiff contends that her 2010 and 2012 Motions are substantively different, mainly because the 2010 Motion was a motion to "clarif[y]" wording of the Amended Agreement as to the

retirement benefits to reflect the "the clear intentions of the parties" for plaintiff to receive one-half of defendant's *basic annuity* payments, while, in contrast, the 2012 Motion was a motion for contempt for defendant's failure to pay plaintiff her one-half of the *basic annuity*. We agree with defendant.

Contrary to the trial court's finding of fact that "[t]he issue of whether or not the plaintiff is entitled to receive one half of the defendant's monthly FERS basic annuity was not fully litigated and decided at the prior hearing in this cause on March 25, 2011[,]" we find, based upon consideration of the motions, the transcript from the 2011 hearing, and the 2011 Order, that the issue was quite fully litigated and decided. In plaintiff's 2010 Motion, she very specifically requested that the trial court order defendant to pay of one-half of the *basic annuity* payments, including both reimbursement of past sums due and continued payment in the future. Plaintiff contends she was seeking to "clarif[y]" the Amended Agreement, but legally, what she sought would more properly be termed reformation of the Amended Agreement. *See Metropolitan Property and Cas. Ins. Co.*, 126 N.C. App. at 798, 487 S.E.2d at 159.

But in its 2011 Order, the trial court denied reformation of the Amended Agreement, although it did not use this

terminology.[5] The trial court found that the Amended Agreement was "unambiguous" and that it would not "modify or supplement" the Amended Agreement, and the trial court quite specifically awarded plaintiff payment of one-half of the *supplemental annuity* only and not the *basic* annuity. We know that this issue was litigated and that the trial court did not overlook the *basic annuity* or confuse it with the *supplemental annuity*, because the trial court also found that defendant was already receiving *basic annuity* payments and plaintiff had requested that she receive half of both the *basic* and *supplemental* annuities. Yet in plaintiff's 2012 Motion, she again requested that defendant be required to pay her one-half of the *basic annuity* payments, past and future.

While the 2011 Order did not explicitly state that it was denying plaintiff's request for the *basic annuity,* in that order the trial court made numerous and detailed findings regarding *both* the basic annuity and the supplemental annuity but ultimately awarded plaintiff only a portion of the *supplemental annuity*. In the 2011 Order, the trial court found that while "plaintiff contend[ed] that the Amended Separation Agreement

_____

[5] As the 2011 Order was not appealed, we express no opinion as to whether the trial court could have or should have granted reformation of the Amended Agreement in 2011.

should be modified and clarified to required the defendant to pay her ½ of his" *basic annuity* . . . "the court deems that the Amended Separation Agreement is unambiguous in regards to the plaintiff's right concerning the defendant's retirement benefits and will not modify or supplemental the provisions contained therein." The trial court then found that plaintiff was "entitled to receive ½ of the defendant's" *supplemental annuity*. The trial court's conclusions of law and decree are supported by the findings of fact as the trial court did not award plaintiff payment for one-half of the *basic annuity,* as it stated it would "not modify or supplement" the Amended Agreement to grant plaintiff these payments as she requested, but the trial court did order that plaintiff should receive one-half of the *supplemental annuity* which was specifically provided for in the Amended Agreement. The 2011 Order was not appealed by either party and thus is the law of the case. *See Wellons v. White*, ___ N.C. App. ___, ___, 748 S.E.2d 709, 720 (2013) ("The law of the case doctrine provides that when a party fails to appeal that order, the decision below becomes the law of the case and cannot be challenged in subsequent proceedings in the same case." (citation, quotation marks, and brackets omitted)). The question of plaintiff's entitlement to one-half of the *basic*

*annuity* payments was decided in 2011 and the 2011 Order was not appealed. As such, plaintiff's 2012 Motion which again requested payment for one-half of the *basic annuity* had no legal basis in either the Amended Agreement or the 2011 Order, and the trial court should not have allowed such a request. *See id.*

We also agree with defendant that he cannot be held in contempt for something he was never ordered to do. In the 2012 Order, all of the findings of fact and conclusions of law regarding why the trial court found defendant to be in contempt were regarding his failure to pay the *basic annuity* payment, not the *supplemental annuity* payment. But because defendant was under no obligation to pay plaintiff one-half of the *basic annuity* payments, under either the Amended Agreement, as decided in the 2011 Order, or under the 2011 Order itself, which ordered only payment of the *supplemental* annuity, he could not be held in contempt on this issue. As failure to pay one half of the *basic annuity* payment was the only basis upon which plaintiff sought for defendant to be held in contempt, and that basis is improper, the trial court should not have found defendant to be in contempt.

Lastly, because the trial court ultimately determined that plaintiff had not erred in bringing the *basic annuity* payment

issue before the court again, it denied defendant's request to sanction plaintiff. But as noted above, this was error on the part of the trial court. As such, on remand the trial court should reconsider defendant's motion for sanctions in light of this opinion, although we express no opinion on whether the trial court should or should not sanction plaintiff.

### III. Conclusion

In conclusion, we reverse the trial court's determination that plaintiff is entitled to receive payment from defendant's *basic annuity*; we reverse the trial court's determination that defendant was in contempt, and we reverse and remand the trial courts determination denying defendant's motion for sanctions.

REVERSED and REMANDED in part.

Judges HUNTER, JR., Robert N. and DILLON concur.