IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-56

Filed 21 May 2024

Hertford County, No. 16-CVD-143

BRANDI LUKE DEANES, Plaintiff,

v.

WILLIAM RYAN DEANES, Defendant,

v.

LISA BEAMON and GORDON BEAMON, Proposed Third Party Intervenors.

Appeal by proposed third party intervenors from order entered 12 September 2022 by Judge J. Henry Banks in District Court, Hertford County. Heard in the Court of Appeals 8 August 2023.

*Mitchell S. McLean for plaintiff and defendant-appellees.*

*Pritchett & Burch, PLLC, by Lloyd C. Smith, III, for proposed third party intervenors-appellant.*

STROUD, Judge.

Proposed third party intervenors appeal a trial court order denying their Motion to Intervene in a child custody proceeding regarding their grandchild. Because proposed third party intervenors failed to show Mother and Father are unfit or have acted inconsistently with their constitutionally protected rights as parents, the trial court did not err by denying their Motion to Intervene and we affirm the trial

court's order.

## I. Background

Plaintiff-mother and defendant-father were married and in January of 2016, they had a child, Raymond.[1] In May of 2016, Mother and Father separated and Mother filed a complaint against Father with claims including child custody, child support, equitable distribution, and attorney's fees. On 11 May 2016, the trial court entered a temporary custody order granting custody of Raymond to Mother and allowing Father supervised visitation. Thereafter, in June of 2016, the trial court entered an order ("2016 Order") incorporating a memorandum of order granting Mother physical and legal custody of Raymond; Father was granted unsupervised visitation; the claims for child support and attorney's fees were dismissed; and their marital property was distributed by consent. After entry of the 2016 Order, Mother and Father "reconciled with one another and are now an intact family[.]" After Mother and Father's reconciliation, Mother and Father had another child, Ed, who was not a subject of the original custody claim or Grandparents' Motion to Intervene.

In 2022, Raymond's maternal grandmother and maternal step-grandfather ("Grandparents") filed a Motion to Intervene and Motion in the Cause for Child Custody in the child custody case seeking custody of Raymond. Grandparents alleged:

---

[1] Pseudonyms are used to protect the identities of the children.

11.     A prior custody determination was entered by this Court between the Plaintiff and Defendant which terms are no longer effectuated as the Plaintiff and Defendant have reconciled.  Both Plaintiff and Defendant have voluntarily deferred parental responsibility and authority for the minor child upon the movements (sic) and have acted in a manor (sic) inconsistent with their constitutionally protected rights, as more specifically alleged herein.

12.     It is in the best interest of the minor child that the Court allow the Movant Intervenors to intervene and that the Court enter an Order granting custody to the Intervenors, as it serves the best interest of the minor child and the Plaintiff and Defendant have acted inconsistent with their constitutionally protected rights.

Grandparents further alleged Mother moved into their home in May of 2016, upon her separation from Father.  They alleged they then became Raymond's primary caregivers; Mother and Father had "ceded parental responsibilities" and "day-to-day decision-making authority" to them; they have "a permanent parent-like relationship with the minor child and have in fact become the de[ ]facto parent[s]" of Raymond; Father had "little to no contact" with Raymond for three years and five months; and Mother moved out to live with her girlfriend leaving Raymond with Grandparents. Most of Grandparents' allegations focused on their claim Parents had ceded their parental responsibilities to Grandparents based upon their assisting in caring for Raymond.  They also alleged Parents were unfit as parents but only one factual allegation addressed unfitness; this allegation addressed an incident during the 2021 Christmas holiday that Father had assaulted Raymond, Mother had threatened

suicide, and then Mother and Father cut off all contact with Grandparents.

On 31 May 2022, Parents filed an "Objection to Hearing and Motion to Continue." In this pleading, Parents alleged the Motion to Intervene and Motion for Custody had been scheduled by Grandparents for hearing "upon the merits of their Motion in the Cause for child custody, for the June 29 & 30, 2022" session of court. Parents alleged they "have no objection to" a hearing on the Motion to Intervene at that session, although they "strongly object[ed]" to the intervention. They alleged that Grandparents "are not parties to this action and, therefore, [Parents] have not served any discovery requests upon them," but if the Motion to Intervene was allowed, they intended to "propound discovery requests" upon Grandparents. Parents also noted that if intervention was allowed, they and Grandparents would be required to participate in the "mandatory child custody mediation requirements of the 6th Judicial District." Parents requested that the trial court continue the hearing on the merits of child custody until after discovery and mediation were completed, should the trial court allow the Motion to Intervene. Parents also filed a "Written Objection and Motion to Quash Subpoena" for subpoenas Grandparents had issued to the child's daycare center and elementary school seeking records of the child. Parents alleged Grandparents were not yet parties to the case and thus had no authority to have subpoenas issued under North Carolina Rule of Civil Procedure 45(a), in addition to various objections to production of the privileged and confidential information regarding the child. *See* N.C. Gen. Stat. § 1A-1, Rule 45(a) (2023) ("Form; Issuance.

– (1) Every subpoena shall state all of the following: a. The title of the action, the name of the court in which the action is pending, the number of the civil action, and the *name of the party at whose instance the witness is summoned*. . . . (4) The clerk of court in which the action is pending shall issue a subpoena, signed but otherwise blank, *to a party requesting it*, who shall complete it before service.").

The hearing was held on 23 August 2022. At the start of the hearing, counsel informed the trial court they had resolved the dispute regarding the subpoenas by consent. Grandparents' counsel noted that "obviously what we intend to be heard today specifically is the motion to intervene, but not the best interest part of it." The hearing then proceeded with presentation of testimony and evidence from Grandparents.

On 12 September 2022, the trial court entered an order denying Grandparents' Motion to Intervene. The trial court made findings of fact regarding the history of the custody case, including a finding that Mother and Father had reconciled after entry of the June 2016 Order and "are now an intact family, whereby each parent/party exercises custody and supervision over the minor child." The trial court also found:

> 9. That, despite the showing that the proposed third party intervenors have maintained a close and substantial relationship with the subject minor child for a number of years, they have not presented evidence to the court sufficient to show that either parent is either unfit as a custodian for the minor child, has neglected the child, or has exhibited conduct, either through acts or omissions,

that would be inconsistent with the presumption that the parents are the best persons to have custody over the child.

10.    That, absent a showing by the proposed third-party intervenors that the plaintiff and defendant, the natural parents of the minor child, are either unfit, have neglected the welfare of the child, or have acted in a manner inconsistent with the paramount status provided to a natural parent by the constitution, the proposed intervenors do not have standing to intervene in this child custody action.

Grandparents appeal.

## II.    Procedure to Determine Standing as a Third-Party in a Child Custody Proceeding

Grandparents first argue that "the trial court failed to make sufficient findings of fact to support its conclusion of law that the proposed third-party intervenors lack standing to intervene." (Capitalization altered.)

Before addressing Grandparents' arguments directly, we first note a procedural issue complicating our review. Standing to bring a custody claim should be based upon the allegations of the pleadings. *See Perdue v. Fuqua*, 195 N.C. App. 583, 588, 673 S.E.2d 145, 149 (2009) ("Intervenor failed to *allege* conduct sufficient to support a finding that the parents engaged in conduct inconsistent with their parental rights and responsibilities. Therefore intervenor could not overcome the presumption that the parents have the superior right to the care, custody, and control of the child, and lacked standing to intervene." (emphasis added)); *see also Sharp v. Sharp*, 124 N.C. App. 357, 363, 477 S.E.2d 258, 262 (1996) ("We hold accordingly that

G.S. § 50-13.1(a) grants grandparents the right to bring an initial suit for custody when there are *allegations* that the child's parents are unfit." (emphasis added)).

Standing is a threshold question which must be answered for the trial court to rule upon a motion to intervene and is separate from the question of whether a third party who has already been allowed to intervene has made a sufficient showing in an evidentiary hearing to convince the trial court and to support findings of fact of the third parties' entitlement to custody.  In *Thomas v. Oxendine*, this court explained this initial determination of standing based upon the pleadings:

> Standing is required to confer subject matter jurisdiction. A trial court's subject matter jurisdiction over a particular matter is invoked by the pleading. At the motion to dismiss stage, all factual allegations in the pleadings are viewed in the light most favorable to the plaintiff, granting the plaintiff every reasonable inference. We review de novo whether a plaintiff has standing to bring a claim.

*Thomas v. Oxendine*, 280 N.C. App. 526, 530-31, 867 S.E.2d 728, 733 (2021) (citations, quotation marks, and brackets omitted).

As Parents' Objection to Hearing and Motion to Continue correctly noted, Grandparents did not automatically become *parties* to the custody case by filing the Motion to Intervene; the trial court would have to rule upon the Motion to Intervene first, and then, *if* Grandparents were allowed to intervene, they would become parties to the case and would then have the authority and duty as parties to participate fully in the case.  Our Supreme Court has explained this difference between a movant who is seeking to intervene and a party who has been allowed to intervene:

> Only parties of record to a suit have a standing therein which will enable them to take part in or control the proceedings. If they desire to seek relief with respect to the matters involved they must either obtain the status of parties in the suit or, in proper instances, institute an independent action. Thus a person not originally a party may be permitted to become a party by his own intervention. In legal terminology, intervention is the proceeding by which one not originally a party to an action is permitted, on his own application, to appear therein and join one of the original parties in maintaining the action or defense, or to assert a claim or defense against some or all of the parties to the proceeding as originally instituted. Stated in another way, intervention is the admission by leave of court of a person not an original party to the pending legal proceeding, by which such person becomes a party thereto for the protection of some right or interest alleged by him to be affected by such proceeding.

*Strickland v. Hughes*, 273 N.C. 481, 484-85, 160 S.E.2d 313, 316 (1968) (citations and quotation marks omitted).

Parents filed their Objection to Hearing and Motion to Continue alleging this difference between a motion to intervene and the motion for custody and requesting a ruling on the motion to intervene before a hearing on the merits was held. The trial court did not rule upon the Objection to Hearing and Motion to Quash because counsel resolved that dispute and the trial court correctly heard only the Motion to Intervene. But instead of ruling on the Motion to Intervene based upon the pleadings alone, as would be appropriate, the trial court instead held an evidentiary hearing regarding the Motion to Intervene. Based upon the appropriate legal standard for standing of Grandparents to intervene – the allegations of the pleadings as noted above, viewed

in the light most favorable to Grandparents – they made sufficient allegations to have standing to intervene. *See Sharp*, 124 N.C. App. at 363, 477 S.E.2d at 262. They alleged Parents "ceded parental responsibilities" and "day-to-day decision-making authority" to them; they have "a permanent parent-like relationship with the minor child and have in fact become the de[ ]facto parent[s]" of Raymond. They also alleged Parents were unfit. But the trial court did not rule based upon the pleadings alone; instead, it held an evidentiary hearing and made findings of fact and ultimately denied the Motion to Intervene based upon its findings of fact.

Neither Parents nor Grandparents objected to the evidentiary hearing on the Motion to Intervene and did not request the trial court to rule based only upon the pleadings. Instead, at the hearing Grandparents' counsel noted that "what we intend to be heard today specifically is the motion to intervene," and they did not ask the trial court to rule based on the pleadings but proceeded to present testimonial evidence. Nor have Grandparents raised any argument on appeal asserting their Motion to Intervene should have been addressed only based upon the pleadings viewed in the light most favorable to Grandparents. Although an evidentiary hearing was not necessary for the trial court to rule upon the Motion to Intervene, no one objected to this procedure. Since there was no objection to the trial court's holding an evidentiary hearing instead of ruling based only on the pleadings, we will consider the Grandparents' arguments on appeal based upon the trial court's order.

## A. Findings of Fact

Grandparents contend that "assuming the trial court made sufficient finds (sic) of fact said finds (sic) of fact are not supported by competent evidence." (Capitalization altered.) Since the trial court did make findings of fact, we will address Grandparents' second argument first, since if the findings are not supported by competent evidence, we would be required to disregard them.

> The standard of review when the trial court sits without a jury is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. In a child custody case, the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings. Unchallenged findings of fact are binding on appeal. Whether the trial court's findings of fact support its conclusions of law is reviewable de novo. If the trial court's uncontested findings of fact support its conclusions of law, we must affirm the trial court's order.

*Sherrill v. Sherrill*, 275 N.C. App. 151, 157, 853 S.E.2d 246, 251 (2020) (citation, quotation marks, ellipsis, and brackets omitted).

The substance of Grandparents' argument challenging the trial court's findings of fact does not truly challenge the findings as unsupported by competent evidence. Instead, Grandparents argue that the "trial court's order is devoid of any reference to specific testimony or evidence upon which it relied to support said findings" and that "[a]ll evidence received by the trial court came from the third-party intervenors" and Mother and Father did not offer any evidence. Grandparents also summarize some of the "uncontradicted testimony and evidence" presented at the

hearing. We note that most of the evidence as summarized addresses events from 2016 until Mother and Father reconciled. But to the extent these facts are relevant to Grandparents' standing at the time they filed the Motion to Intervene in 2022 – about two years after Parents reconciled – the trial court is not required to make detailed findings regarding all the evidence presented; the trial court must only make the findings of ultimate fact needed to resolve the issues presented. *See In re G.C.*, 384 N.C. 62, 66, n. 3, 884 S.E.2d 658, 661, n. 3 (2023) ("There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts. Ultimate facts are those found in that vaguely defined area lying between evidential facts on the one side and conclusions of law on the other. In consequence, the line of demarcation between ultimate facts and legal conclusions is not easily drawn. An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts. Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law. When the statements of the judge are measured by this test, it is manifest that they constitute findings of ultimate facts, *i.e.*, the final facts on which the rights of the parties are to be legally determined." (citation and ellipsis omitted)).

The trial court did not need to cite to specific evidence in its findings or to make a finding of fact on each and every piece of evidence presented by Grandparents. *See*

*In re J.A.A.*, 175 N.C. App. 66, 75, 623 S.E.2d 45, 51 (2005) ("[T]he trial court is not required to make findings of fact on all the evidence presented, nor state every option it considered."). As Grandparents have not demonstrated that any of the trial court's findings of fact are not supported by competent evidence, we will consider whether the trial court's findings of fact support its conclusion of law.

**B. Conclusion of Law**

The trial court denied the Motion to Intervene and Motion in the Cause for Child Custody and concluded that Grandparents "have failed to carry their burden of proof to show that they have standing in this action to intervene as a party opponent against the natural parents of the subject minor child" and therefore denied the Motion to Intervene. "We review questions of standing in child custody actions *de novo.*" *Wellons v. White*, 229 N.C. App. 164, 173, 748 S.E.2d 709, 717 (2013) (citation omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.* (citations and quotation marks omitted). And we note that although standing would normally be based upon the allegations of the pleadings alone, we are basing our review on the trial court's order because of the procedure used in this case, without objection from Parents or Grandparents.

Here, Grandparents were seeking custody of Raymond, not visitation. "[O]ur Courts have distinguished grandparents' standing to seek visitation from

grandparents' standing to seek custody."[2] *Perdue*, 195 N.C. App. at 586, 673 S.E.2d at 148.

> Under the "intact family" rule, "a grandparent cannot initiate a lawsuit for visitation rights unless the child's family is already undergoing some strain on the family relationship, such as an adoption or an ongoing custody battle." The "intact family" rule is intended to protect parents' constitutional right "to determine with whom their child shall associate." In North Carolina, an "intact family" is not limited to situations where "both natural parents live together with their children;" instead, it may "include a single parent living with his or her child."

*Wellons*, 229 N.C. App. at 175, 748 S.E.2d at 718 (brackets omitted).

In *Perdue v. Fuqua*, the maternal grandmother sought to intervene in a custody proceeding between the grandchild's parents, but she failed to make sufficient allegations that the "natural parents are unfit, have neglected the welfare of the child, or have acted in a manner inconsistent with the paramount status provided by the Constitution[.]" *Perdue*, 195 N.C. App. at 586-87, 673 S.E.2d at 148. This Court thus affirmed the trial court's denial of her motion to intervene. *Id.* at 588, 673 S.E.2d at 149. This Court explained,

> While this Court recognizes that intervenor satisfies the definition of "other person" because she was the primary caregiver since birth and she had a close familial relationship with the minor child, the grandmother is still required to allege parental unfitness. Despite the broad language of N.C. Gen.Stat. § 50-13.1, non-parents do not have standing to seek custody against a parent unless they

---

[2] Grandparents' counsel noted at the hearing "just to be clear, we are not moving under grandparent visitation. . . . this is not a visitation action."

- 13 -

overcome the presumption that the parent has the superior right to the care, custody, and control of the minor child. A parent can lose this superior right status through conduct inconsistent with the presumption that the parent is the best person to have primary custody over the child.

While the court applies the best interest of the child analysis in a custody action between parents, to do so when the custody dispute is between a parent and a non-parent offends the Due Process Clause if the parent's conduct has not been inconsistent with his or her constitutionally protected status. If the non-parent can show the parent engaged in conduct inconsistent with his or her right to custody, such as abandonment, then the court can apply the best interest test to determine whether the non-parent should receive custody.

Therefore, absent a showing by intervenor that the natural parents are unfit, have neglected the welfare of the child, or have acted in a manner inconsistent with the paramount status provided by the Constitution, the intervenor does not have standing. If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim. Without jurisdiction the trial court must dismiss all claims brought by the intervenor.

*Id*. at 586-87, 673 S.E.2d at 148.

Just as the intervenor in *Perdue*, here, Grandparents satisfy the definition of "other person" under North Carolina General Statute Section 50-13.1(a). *See id*. The trial court found "the proposed third-party intervenors have shown that they have maintained a substantial and close relationship with the subject minor child for many years." But the trial court also stated that a third party does not have standing to seek custody against a parent unless they overcome the presumption that the parent has a constitutional superior right to the care, custody, and control of the minor child.

A parent can lose this superior status if the parent is unfit, has neglected the child, or has acted in a manner inconsistent with the parent's constitutionally protected status. *See id*.

Thus here, as non-parents seeking custody from parents, Grandparents must demonstrate "that the natural parents are unfit, have neglected the welfare of the child, or have acted in a manner inconsistent with the paramount status provided by the Constitution[.]" *Id*. The trial court found Grandparents did not carry their burden of proof to show Mother and Father are unfit or have acted in a manner inconsistent with their constitutionally protected rights as parents.

The trial court's findings of fact 8-11 state:

> 8. That the proposed third-party intervenors have shown that they have maintained a substantial and close relationship with the subject minor child for many years.
>
> 9. That, despite the showing that the proposed third party intervenors have maintained a close and substantial relationship with the subject minor child for a number of years, they have not presented evidence to the court sufficient to show that either parent is either unfit as a custodian for the minor child, has neglected the child, or has exhibited conduct, either through acts or omissions, that would be inconsistent with the presumption that the parents are the best persons to have custody over the child.
>
> 10. That, absent a showing by the proposed third-party intervenors that the plaintiff and defendant, the natural parents of the minor child, are either unfit, have neglected the welfare of the child, or have acted in a manner inconsistent with the paramount status provided to a natural parent by the constitution, the proposed

intervenors do not have standing to intervene in this child custody action.

11.    That the proposed third-party intervenors have not carried their burden of proof to show that they, based upon the greater weight of the evidence presented, have standing, or otherwise should be allowed to participate as a party, in this child custody action against the natural parents of the subject minor child.

While the trial court's order is brief, the trial court's findings addressed the ultimate facts necessary for its conclusion of law.   Even if we assume all the evidence presented by Grandparents is true, the evidence failed to show Parents are unfit or have acted in a manner inconsistent with their constitutionally protected rights by abdicating their role as parents.

Most of Grandparents' evidence addressed the time period from the child's birth in January 2016 until May 2020, when the Parents reconciled.  During most of the four years prior to May 2020, Mother and Raymond resided with Grandparents. During this time, Mother was employed, and Grandparents assisted Mother in caring for the child, especially when she was working.  Mother's job often required 24-hour shifts, so Grandparents cared for Raymond when she was working or sleeping after work.  There is no dispute that Grandparents had a close relationship with Raymond. For a period of a few months in 2019, Mother moved to stay with a friend in Elizabeth City, and she took Raymond with her, but he continued to stay with Grandparents about "75 percent" of the time.  In May 2020, when Parents reconciled, Mother and the child began residing with Father.

Grandparents did allege in their motion that Parents were unfit and made allegations regarding Father assaulting Raymond and Mother threatening suicide, but at the hearing they did not present any evidence regarding these allegations. Thus, at the hearing Grandparents relied entirely upon their contention that Parents had voluntarily ceded their parental responsibilities to Grandparents. In fact, Parents also had a younger child, Ed, born in 2021, but Grandparents did not seek custody of the younger child. At the hearing, Grandparents acknowledged that Parents were fit parents for both grandchildren but sought custody of only Raymond because they had a "stronger relationship" with him based on the time he resided in their home prior to May 2020. After Parents reconciled, Raymond continued to visit with Grandparents several days a week, but Ed, who was a baby at the time, did not visit as often.

Before the trial court, Grandparents argued that Mother voluntarily relinquished Raymond to Grandparents based upon the period of a few months in 2019 when she lived with a friend in Elizabeth City. But the evidence did not demonstrate that Mother voluntarily abdicated her role as a parent in any way, even during the few months in 2019, about four years before Grandparents filed their Motion to Intervene. This case is similar to *Rose v. Powell*, where a grandparent has provided assistance and support for a parent and grandchild in a time of need but the parent has not ceded her role as a parent. *See Rose v. Powell*, 290 N.C. App. 339, 342, 892 S.E.2d 102, 103-04 (2023). In *Rose*, the paternal grandparents brought a claim

for custody of their grandchild after the death of their son, the grandchild's father. *Id*. at 340-41, 892 S.E.2d at 103-04. They alleged that after the father's death, the paternal grandparents and grandchild "spent time together, had weekly dinners, went shopping, and took occasional trips to Myrtle Beach[;]" they also provided some financial assistance for the grandchild. *Id*. at 341, 892 S.E.2d at 103. Later, the mother cut off the grandparents' relationship with the grandchild and the grandparents sued for custody or visitation. *Id*. at 341, 892 S.E.2d at 103-04. This Court affirmed the trial court's order dismissing the grandparents' claims[3], stating:

> First, [the p]laintiffs claim that [the d]efendant acted in a manner inconsistent with her protected parental status when she essentially adopted [the p]laintiffs and their family as an integral part of Aubrey's life.
>
> A natural parent's constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child is based on a presumption that he or she will act in the best interest of the child. A parent acts inconsistently with their constitutionally-protected status when they are unfit or if they neglect or abandon the child. Another way in which a parent's actions may be deemed inconsistent with their constitutionally-protected interest is if he or she brings a nonparent into the family unit, represents that the nonparent is a parent, and voluntarily gives custody of the child to the nonparent without creating an expectation that the relationship would be terminated.
>
> Here, [the p]laintiffs allege the constitutional presumption that [the d]efendant should have custody was overcome by demonstrating in their complaint that [the d]efendant acted inconsistently with her parental status when she brought them into the family unit and represented them as

---

[3] This dismissal was based upon the pleadings and not an evidentiary hearing.

an integral part of the family unit without creating an expectation that the relationship would be terminated. [The p]laintiffs liken themselves to the plaintiff in *Boseman v. Jarrell*, a case in which domestic partners intentionally and voluntarily created a family unit in which plaintiff was intended to act—and acted—as a parent. This argument misses the mark. Unlike the plaintiff in *Boseman*, here, [the d]efendant never had a romantic relationship with either [p]laintiff nor did [the d]efendant conceive a child with either [p]laintiff. The facts in the Record show that [the p]laintiffs provided some financial support to [the d]efendant, introduced [the d]efendant to their family in Ohio, had weekly phone calls with [the d]efendant, and for a time would come over to [the d]efendant's house to let her dog out. At no point did [the d]efendant represent that either [p]laintiff would be considered a parent to Aubrey or that they would have guaranteed visitation with Aubrey. Further, no allegations assert [the d]efendant was unfit or otherwise incapable of caring for Aubrey. For those reasons, we hold the trial court did not err when it dismissed [the p]laintiffs' claim that [the d]efendant was acting in a manner inconsistent with her protected parental status.

*Id*. at 341-42, 892 S.E.2d at 104 (citation, quotation marks, ellipsis, and brackets omitted).

Although here we relied upon the trial court's findings of fact instead of the pleadings, as previously explained, just as in *Rose*, Grandparents here failed to demonstrate they assumed a parental role with Raymond or that either Mother or Father had represented that Grandparents would be considered as parents or guaranteed visitation with Raymond. *See id*.

In *Mason v. Dwinnell*, this Court noted

[w]hen examining a legal parent's conduct to determine

- 19 -

whether it is inconsistent with his or her constitutionally-
protected status, the focus is not on whether the conduct
consists of good acts or bad acts. Rather, the gravamen of
inconsistent acts is the volitional acts of the legal parent
that relinquish otherwise exclusive parental authority to a
third party.

*Mason v. Dwinnell*, 190 N.C. App. 209, 228, 660 S.E.2d 58, 70 (2008) (quotation marks

omitted). In *Rodriguez v. Rodriguez*, this Court noted

the specific question to be answered in cases such as this
one is: Did the legal parent act inconsistently with her
fundamental right to custody, care, and control of her child
and her right to make decisions concerning the care,
custody, and control of that child? In answering this
question, it is appropriate to consider the legal parent's
intentions regarding the relationship between his or her
child and the third party during the time that relationship
was being formed and perpetuated.

Thus the court's focus must be on whether the legal
parent has voluntarily chosen to create a family unit and
to cede to the third party a sufficiently significant amount
of parental responsibility and decision-making authority to
create a permanent parent-like relationship with his or her
child. The parent's intentions regarding that relationship
are necessarily relevant to that inquiry. By looking at both
the legal parent's conduct and his or her intentions, we
ensure that the situation is not one in which the third party
has assumed a parent-like status on his or her own without
that being the goal of the legal parent.

*Rodriguez v. Rodriguez*, 211 N.C. App. 267, 277, 710 S.E.2d 235, 242 (2011) (citations,

quotation marks, ellipsis, and brackets omitted).

Here, Grandparents did not present any evidence tending to show either

Parent ceded any "parental responsibility [or] decision-making authority" to them.

*Id.* Instead, Grandparents assisted Mother and Raymond in many ways during Mother and Father's separation. But there is no evidence Mother and Father ever had any intention of allowing Grandparents to assume a "parent-like status" to Raymond. *Id.* Grandparents alleged sufficient facts in their Motion to Intervene to survive a motion to dismiss for standing based on the pleadings, but without objection, the trial court held an evidentiary hearing instead of ruling based upon the pleadings. The trial court's findings of fact are supported by the evidence and these findings support the trial court's conclusion that Grandparents have failed to prove either Parent acted inconsistently with their constitutionally protected status or are unfit. *Id.* We therefore affirm the trial court's order denying the Motion to Intervene.

## III. Conclusion

As the trial court's findings of fact are supported by the evidence, and the findings support its conclusion of law and denial of Grandparents' Motion to Intervene, we affirm the trial court's order.

AFFIRMED.

Judges ARROWOOD and GRIFFIN concur.